**15-25-00153-CV**

ACCEPTED
15-25-00142-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/8/2025 3:01 PM
CHRISTOPHER A. PRINE
CLERK

CAUSE NO. D-1-GN-25-000719

459TH DISTRICT COURT TRAVIS COUNTY, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

FOR THE 15TH COURT OF APPEALS  15-25-00142-CV

10/8/2025 3:01:03 PM
CHRISTOPHER A. PRINE
Clerk

---

ROBERT EDWARD BATTAILE, Relator,

v.

KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS; JANE NELSON, SECRETARY OF STATE OF TEXAS; AND ALL REAL PARTIES IN INTEREST LISTED BELOW AS COURTESY APPELLEES/RESPONDENTS (INCLUDING DISMISSED PARTIES WITH ONGOING HARMS), Respondents.

---

**ORIGINAL PETITION FOR WRIT OF MANDAMUS TO THE 459TH COURT FOR THE HONORABLE JUSTICES OF THE 15TH COURT OF APPEALS:**

Relator Robert Edward Battaile, pro se, files this Original Petition for Writ of Mandamus pursuant to Texas Rule of Appellate Procedure 52, Texas Government Code § 22.221, and Article V, Section 6 of the Texas Constitution. Relator seeks extraordinary relief to compel Respondents—Attorney General Ken Paxton and Secretary of State

– 1 –                                      15-25-00142-CV

Jane Nelson—to perform ministerial duties under the Texas Election Code, including investigating and overseeing a new election for the 2024 Manor, Texas, City Council and Mayoral contest, certifying results, addressing related civil rights and constitutional violations, and halting cemetery desecration, parkland theft, destruction of historic sites, police retaliation, civil rights abuses, systemic neglect and other offenses.

These failures constitute an abuse of discretion, deprive Relator of constitutional rights, and leave no adequate remedy at law. The underlying trial court (459th District Court, Travis County) has demonstrated on-going delays, bias, and incapacity, with unruled motions pending for nine months despite statutory expedited timelines.

Dismissals of key parties do not erase ongoing harms (e.g., historic desecration, election fraud, services denial), necessitating this Court's intervention via Special Master or direct fact-finding without remand to the lower court. Given statewide implications, Relator prays this Court exercise original jurisdiction to resolve all issues, ensuring notice to all prior defendants via eService thru 459th to 3rd Circuit 03-25-00484-CV and to 15th Circuit which has accepted the case.

## A. IDENTITY OF PARTIES AND COUNSEL

**Relator**: Robert Edward Battaile, pro se. Address: [Redacted for Privacy; on file with the Court].

**Respondents**: Ken Paxton, Attorney General of Texas; Jane Nelson, Secretary of

State of Texas. Represented by the Office of the Attorney General, 300 W. 15th Street, Austin, TX 78701.

**Real Parties in Interest**: All original and amended defendants from Cause No. D-1-GN-25-000719, including but not limited to: State of Texas; City of Manor, Texas (dismissed but ongoing harms persist via successors/contractors); Travis County; developers/consultants such as Freese and Nichols (dismissed but Comprehensive Plan misuse continues https://mccmeetingspublic.blob.core.usgovcloudapi.net/manortx-meet-b02aa618f52c4bcc9c0676edfcaee146/ITEM-Attachment-001-477254d950f245f483b2737bb2a38793.pdf ); other officials/entities implicated in ultra vires acts, election coercion, historic desecration, land misappropriation, or civil rights violations. Despite dismissals, these parties remain involved due to persistent and irreparable harms (e.g., demolitions, quorum-less operations).

New party in interest: DG Manor Downs Property Owner LP – Attn: Joseph Walker, General Counsel, Dalfen Industrial, 17304 Preston Rd., Suite 550, Dallas Texas 75252

New party in interest: Texas A&M University Foundation, Attn: Will Fusselman, VP/General Counsel, 401 George Bush Dr., College Station, TX 77840

## B. TABLE OF CONTENTS

A. Identity of Parties and Counsel ................................................ 2

B. Table of Contents ................................................................. 3

C. Index of Authorities .................................................................. 4

D. Statement of the Case ............................................................ 8

E. Statement of Jurisdiction ........................................................ 16

F. Issues Presented .................................................................... 17

G. Statement of Facts ................................................................ 17

H. Argument .............................................................................. 19

I. Rule 171 Masters in Chancery .................................................. 22

I. Prayer for Relief ...................................................................... 24

## C. INDEX OF AUTHORITIES

**Cases**

•Beacon Theatres v. Westover, 359 U.S. 500 (1959) — preserves the right to a jury on legal claims even when equitable issues are present; supports your request that any damages issues be tried to a jury after mandamus relief stabilizes the case posture.

•Bush v. Gore, 531 U.S. 98 (2000) — courts may intervene in election administration to prevent unequal treatment; supports extraordinary relief for tainted local procedures.

•City of Dallas v. Stewart, 361 S.W.3d 562 (Tex. 2012) — property/takings determinations require meaningful judicial (and often jury) review; supports

injunctions and later compensation issues tied to demolition/historic loss.

•City of El Paso v. Heinrich, 284 S.W.3d 366 (Tex. 2009) — ultra vires exception to sovereign immunity; lets you seek prospective orders against officials despite immunity defenses.

•City of Houston v. Williams, 353 S.W.3d 128 (Tex. 2011) — municipal contract claims can proceed; supports your Bocce League contract theory notwithstanding immunity arguments.

•Curtis v. Loether, 415 U.S. 189 (1974) — § 1983 civil-rights damages carry a jury-trial right; frames what happens after mandamus on your legal claims.

•Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962) — labels can't convert legal claims into equity to evade a jury; reinforces your demand to preserve jury issues.

•Ex parte Young, 209 U.S. 123 (1908) — permits injunctive relief against state officials for ongoing constitutional violations; supports naming Paxton/Nelson for prospective mandates.

•Hawkins v. Town of Shaw, 437 F.2d 1286 (5th Cir. 1971) — unequal municipal services can violate equal protection; supports your reparations/under-service remedial framework.

•Illinois Central R.R. v. Illinois, 146 U.S. 387 (1892) — anchors the public-trust doctrine; supports claims against alienating parks/plazas without lawful

safeguards.

•In re Hotze, 627 S.W.3d 642 (Tex. 2020) — Texas Supreme Court exercised mandamus in an election-law dispute; confirms the extraordinary-writ pathway for election oversight.

•In re Triantaphyllis, 68 S.W.3d 861 (Tex. App.—Houston [14th Dist.] 2002) — courts of appeals may use special masters/fact-finding to craft workable relief when the trial court is ineffective.

•Milliken v. Bradley, 433 U.S. 267 (1977) — authorizes structural remedies for systemic violations; supports tribunal/special-master relief across institutions.

•Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) — municipal liability for policies/customs; supports § 1983 claims against City/County actors (not the State).

•Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978) — landmark-preservation regulation is not a per se taking; supports interim injunctions to protect historic resources.

•Rothgery v. Gillespie County, 554 U.S. 191 (2008) — due-process/right-to-counsel attachment at first appearance; supports your narrative on procedural failures around arrest/charging.

•Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982) — sustained injunctive/structural

relief for unconstitutional confinement conditions; supports court-supervised remedies (e.g., jail/booking conditions) adjunct to mandamus.

•Walker v. Packer, 827 S.W.2d 833 (Tex. 1992) — sets the Texas mandamus standard: clear abuse of discretion + no adequate appellate remedy; your threshold showing.

**Statutes**

•Tex. Const. art. I, § 15 — guarantees the right to trial by jury; supports your request to preserve jury issues once equitable relief (via mandamus) is set.

•Tex. Elec. Code §§ 31.003, 273.001, 273.021, 232.012 — chief election officer duties and mandamus/investigation tools (31.003, 273.001, 273.021) plus expedited election-contest timelines (232.012); foundation for compelling statewide oversight and speed.

•Tex. Gov't Code § 22.221(a)–(b), § 22.220(d) — courts of appeals' mandamus power (22.221) and appellate jurisdictional context (22.220(d)); anchors this Court's authority over your original proceeding alongside the companion appeal.

•Tex. Gov't Code § 402.028 — authorizes AG assistance to local prosecutions upon request; supports involving the AG in election-offense matters.

•Tex. Gov't Code § 552.001 et seq. (Public Information Act) — guarantees public

access to records; supports your ask to compel disclosure of any election-investigation materials and to curb obstructive cost estimates.

•Tex. Health & Safety Code § 711.010 — cemetery protections/access with court involvement before disturbance; supports injunctive relief and GPR-survey orders.

•Tex. Loc. Gov't Code § 253.001 — voter approval required to sell/lease public parkland; supports public-trust/park-misappropriation claims.

•42 U.S.C. § 1983 — vehicle for constitutional claims against local governments and officials; pairs with Monellfor municipal liability and preserves damages/jury issues.


### D. STATEMENT OF THE CASE

This mandamus arises from Relator's Second Amended Petition (filed August 18, 2025, in the 459th District Court, Travis County), which amends prior filings (January 29 and March 17, 2025) to contest the November 2024 Manor election under Texas Election Code §§ 221-233. Allegations include fraud, ballot denial (e.g., to Bobby Reese), federal election coercion, lack of quorum, civil rights claims (42 U.S.C. § 1983), ultra vires acts piercing immunity, historic protections (e.g., Black cemeteries, 1840 Manor homestead), public land misappropriation (parks/plazas via 380 agreements), reparations for 20+ years of denied services, contract breach (Austin Bocce League), and demands for jury trial/damages.

Filing in the 459th before the full transfer to the 15th Circuit of Appeals ensures eService to all prior defendants, keeping them accountable despite dismissals. Respondents have ministerial duties (Tex. Elec. Code §§ 31.003, 273.001, 273.021; Tex. Gov't Code § 402.028) but refused intervention despite certified protests (Aug. 2, 2025, to Nelson; Aug. 28, 2024, to Paxton) and stymied FOIA requests. Specifically, Attorney General Paxton's office determined that Secretary of State Nelson is not required to reveal results of any mandated investigation into Relator's allegations of election coercion, without even confirming that an investigation occurred.

Additionally, Relator submitted a FOIA request to the Manor Police Department for records of all reports filed by Relator and related "investigations" (including alledged coverups and "inactive" files), receiving an exorbitant cost estimate of $3,625.64 based on 200 hours (five weeks) of work—an attempt to obstruct access for a pro se litigant. Relator filed a complaint with Attorney General's office regarding these onerous costs.

The trial court's nine-month delays on motions (Exhibit A: "Unruled Motions") violate expedited rules (Tex. Elec. Code § 232.012). Dismissals (e.g., City of Manor, Nelson) suggest indifference/concealment, but harms continue (e.g., demolitions by successors), creating a conundrum resolvable only by Special Masters or this Court.

One Real Party in Interest dismissed **without prejudice** by Judge Mangrum was Legacy Performance Capital, LLC; the developer seeking to build 95 townhomes on the "newly discovered" 1906 McVey "Cemetery Lot" site beside the 1871 Manor Cemetery.

**Properties in imminent danger of irreparable harm that we are seeking A TEMPORARY 45-Day INJUNCTION to immediately halt the following:**

**1.** Immediate 45-day Temporary Restraining Order to enjoin any and all further demolition, grading, or construction by Legacy Performance Capital at the historic 1906 Martin McVey Cemetery site pending Ground Penetrating Radar survey and judicial determination of cemetery boundaries.
(Cross-ref: Pl. 2nd A Pet. Item 22, pp. 65–68; Pl. App. R1 pp. 65–68)
Applicable law: Tex. Health & Safety Code § 711.010; City of San Antonio v. Kaur, 574 S.W.3d 595 (Tex. App.—San Antonio 2019, no pet.).

A. **New urgency**. On Sept 25, 2025 Manor resident, Donald McVade was murdered at his home next to the Manor Cemetery and water plant. Donald was a 75-year old man that was one of the Old Manor locals regularly seen walking. If Mr. McVade family wishes, Relator feels that the most righteous burial site is at the adjacent Martin McVey Cemetery likely purchased by his great- or great-great grandfather for "a cemetery lot" in 1906; and now slated to be underneath 95 town-homes. Owner, Legacy Performance Capital was dismissed WITHOUT PREJUDICE in District Court case.

B. Further, Relator recently did a Public Information Act request on Sept 11, 2025 for the GPR Mapping results at the Manor Cemetery, and to see the LSI Agreement, and to know the account that this $32,500 expenditure was drawn from. I paid an $18

invoice for this information that was never provided. "No responsive records" is unacceptable. Thus, I filed an Ethics Complaint via email on Wed, Oct 1, 2025 which must cause the Ethics Commission to be enacted by the City Manager who refused to do so with Relator's previous Ethics Complaint. This GPR mapping would be crucial to selecting Mr. McVade's closest available burial spot.

  – See Exhibit A. Historic District of Manor Map; Cemetery location and graves

   Exhibit B. McVey (McVade) Parcel shown beside Manor Cemetery, rectangular lily patches, and vertical sidebar showing 1906 Deed Registry for "cemetery lot."

  – See 2nd Am to Pet – Prayer pg 24, et seq.; also Item X. p 30:33 cemetery desecration and misuse of funds; App 1 R1 p 16:42

2. Immediate 45-day Temporary Restraining Order to enjoin any and all further construction on the 1840's James B. Manor Homestead property; by Manor MF, LLC (eastern parcels); and Las Entradas (western parcels) [et al with ownership interests] pending final adjudication of claims for historic preservation and public trust violations.

   Further, Appellant is adding Texas A&M Foundation as a Party in Interest as they were the recipient of the properties for this item 2. Despite Appellant's efforts using the Public Information Act; he has gotten runaround from discovering the exact parcels donated by Col. Eppright; along with any CCR's and other deed restrictions.  These parcels were purchased by Pete Dwyer (possibly as Cottonwood Holdings) and later sold

to Las Entradas Development, Manor MF LLC and others.

Appellant also wants to insure that this purchase was an arm's length transaction and not a sweetheart deal resulting in lost tax revenue or funds to the Foundation.

− See Exhibit C: Map with Manor City limits in yellow and Manor ETJ in blue. Respondent's notes for poster used in campaigning at poll locations. Old Manor is tiny section at lower left.

− See App 1 R1 p 2:14; also p 138:140)

Applicable law: Tex. Loc. Gov't Code § 253.001; City of El Paso v. Heinrich, 284 S.W.3d 366 (Tex. 2009).


3. Immediate 45-day Temporary Restraining Order to enjoin any and all further construction on Halt ongoing development at 104 E Townes St. by Carlos Moyeda and associated entities, where the historic mansion was demolished in violation of the City's Historic District ordinances, to be replaced by townhomes. A zoning change in which the Comprehensive Plan was used as a cudgel against the citizens to destroy our town.

− See App 1 R1 p 116. et seq inc *Manor Historic Resources Survey* by Travis County Historical Commission.

Applicable law: Tex. Loc. Gov't Code § 253.001; City of Dallas v. Stewart, 361 S.W.3d 562 (Tex. 2012).

4. Immediate 45-day Temporary Restraining Order to enjoin any and all further construction and site work on Boyce Street projects by BuildBlock.io pending review for historic resource impacts; and faulty approvals within historic district. Removing single-family homes for two horrible, out-of-scale office/store/apartments.

– See 2nd A Pet. Item 26, pp. 75–77; Pl. App. R1 p 149:154)

Applicable law: Tex. Loc. Gov't Code § 253.001; Tex. Gov't Code § 2206.001; City of El Paso v. Heinrich, 284 S.W.3d 366 (Tex. 2009).


5. Enjoin Manor Grocery renovation project proposed by owner, Maqil Inc. who now has a Manor PO Box 399 shown in TravisCAD. This may be a result of Appellant notifying the Agency that their owner listing was incorrect when Citations were unable to be served at the prior address. This historic Main Street property has applied for a zoning change and plans demolitions of the gas pumps and metal building long part of Old Manor, along with other improper changes.

**New Urgency:** Wed Oct 8, 2025 Planning and Zoning Commission includes the Special Zoning Permit application: **Consideration, discussion, and possible action on a Specific Use Permit for one (1) lot on 0.2376 acres, more or less, and being TCAD parcel 238889 also known as 100/102 E Parsons St, Manor, TX.** *Applicant: Cristian Garcia  Owner: Maqil Inc*

– See App 1R1 p 142:148)

Applicable law: Tex. Loc. Gov't Code § 253.001; City of Dallas v. Stewart, 361 S.W.3d

562 (Tex. 2012); Tex. Nat. Res. Code ch. 191 (Texas Antiquities Code).

6. Issue a 45-day Temporary Restraining Order to enjoin DG Manor Downs Property Owner LP / Dalfen Industrial from any demolition, grading, or construction at the historic Manor Downs racetrack site (approximately 146.920 acres), where no warehouses have yet been constructed. City of Manor improperly "agreed" to not require a Traffic Impact Analysis. City never disclosed that the company had already done one as noticed on Sept. 23, 2022 in which Travis County required Dalfen to spend $2,368,849 with a 10% bond against future repairs. Travis County also imposed environmental requirements—water-retention ponds and plantings within 100' from the center of Gillelands Creek. Instead of requiring a new TIA, Manor approved rich incentives: Phase I up to $5,693,953; Phase I + II up to $8,907,771; wastewater impact-fee reimbursement up to $345,288; plus 100% property-tax rebate for years 1–3 and 50% for years 4–13. The historic racetrack/grandstands are still standing and under imminent threat. City claims to "preserve" the historic signifigance by bulldozing it down and putting the name "Manor Downs" on the warehouse park. That's a highly offensive prospect and another reason that all actions taken by this fraudulent council must be thrown out based on an illegal quorum.

**New Urgency:** Dalfen Industries wants to remove heritage tree, and has submitted the following agenda item to the Wed Oct 8 Planning and Zoning Commission Meeting:

16.**Consideration, discussion, and possible action to remove a Heritage Tree in the Manor Downs**

**Industrial project, being a 29" Pecan tree identified as #5019 in the tree survey for said project, and being located at 8916 Hill Lane, Manor, TX.** *Applicant: Bowman Consulting Group, LTD Owner: DG Manor Downs Property Owner, LP*

Applicant wants to tear out an entire grove of historic trees rather that move driveway.

– *See* Êxhibit D. Photos of Manor Downs "stadium" front and side views

Exh E. Current view of adjacent building and stands – needs restoration

Exh F. Willie Nelson and Stevie Ray Vaughn Posters from Farm Aid Concerts.

Exh G. This is the replacement "amphitheater?" and latest site plan w more bldgs

Exh H. Tree(s) slated for removal for P&Z commission vote 10-8-25

Exh I. Dalfen Industries Annexation "presentation" brochure

Exh J. Travis County Contruction Agreement; and Manor Agreement

Exh K. Chapter 380 Agreement with City of Manor (with unnecessary incentive "giveaways" worth several million dollars.)

*Applicable law:* Tex. Loc. Gov't Code § 253.001; Tex. Health & Safety Code § 711.010; *City of Dallas v. Stewart*, 361 S.W.3d 562 (Tex. 2012).

Note that Plaintiff was prevented from speaking at council meetings and opposing the City's April 2025 Manor Downs ordinance in real time because bail restrictions prohibited his attendance at Council and Planning & Zoning meetings due to the

requirement to stay 600' feet from alleged criminals, City Manager Leslie Moore, and City Secretary, Lluvia Almaraz. Further, despite the Open Meetings Act – Travis County and the State of Texas did NOTHING to enforce that "empty" constitutional right when the City refused to even read his public comments at these meetings. Those retaliatory bail restrictions have since been dismissed in Travis County Criminal Courts for lack of evidence, one citing Owens v. State. Accordingly, Manor Downs is being raised here as a newly discovered matter of urgent concern.

**Appendix One Rev One** provides extensive background critical to the broader understanding of this case and its impact for the protection of Manor history, its pride as a people ~ and its former and current potential for a robust civic culture, recreation and quality of life.

### E. STATEMENT OF JURISDICTION

This Court has original mandamus jurisdiction under Tex. Gov't Code § 22.221(a)-(b) and exclusive appellate authority over state-involved matters (Tex. Gov't Code § 22.220(d)). Election contests with statewide impact warrant extraordinary relief. See In re Hotze, 627 S.W.3d 642 (Tex. 2020). Equity powers allow Special Master appointment or fact-finding where lower courts fail. See In re Triantaphyllis, 68 S.W.3d 861 (Tex. App.—Houston [14th Dist.] 2002).

**F. ISSUES PRESENTED**

Compel election oversight/new contest, addressing persistent fraud despite dismissals. Pierce sovereign immunity for ultra vires acts by all parties. Appoint Special Master for historic protections/tribunals (including GPR survey for 1906 McVey Cemetery Lot area). Remedy land misappropriations including parklands and public plazas under public trust doctrine. Award reparations for decades of services denial in Old Manor. Enforce contract breaches to Austin Bocce League, a 501(c)(3) charitable organization. Determine damages via jury. Set jury trial for factual issues. Enjoin Respondents to release all information related to any election investigation, including confirmation of its existence and results. Compel Respondents to address and remedy onerous FOIA costs for Manor Police records, including investigation of Relator's complaint and waiver/reduction for pauperis status; or as part of the "normal" discover process outlined in Plaintiff's pleadings.

**G. STATEMENT OF FACTS**

Per the Second Amended Petition (pages 1-10): Relator seeks neutral oversight outside Travis County; reasserts struck requests for external judge/election supervisor; details protests/FOIA obstructions, including the Attorney General's determination shielding election investigation results and the excessive Manor Police FOIA cost estimate/complaint; proposes Bexar/Harris oversight or tribunals (Reparations/Historic

Justice, Parks/Recreation Trust) with eminent domain powers; highlights City's $105M funds for community needs and uses including parks, culture, recreation and historic preservation; notes epiphany of dismissed Defendant's having no ability to provide equitable remedies (e.g., July 28, 2025, problems when severance was requested for dismissed Nelson); demands partial summary judgment/jury trial.

Dismissals don't erase decades of infractions (civil rights, cultural suppression, empty parks). Facts invoke Rothgery v. Gillespie County, 554 U.S. 191 (2008), and Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

The 1906 McVey Cemetery has been confirmed through deed records, photographic evidence, and site visits to contain known and suspected burial grounds of historically Black residents of Manor, Texas. Relator owns plots within the cemetery and has been active in efforts to preserve the James B. Manor Homestead and other landmarks.

Despite public outcry, the City of Manor has approved a 95-unit townhome development using a flawed "Comprehensive Plan Dashboard" which ignored the cemetery designation, the community character and its placement within the Historic District of Old Manor. This development threatens to irreparably destroy sacred land, and authorities have refused to investigate despite formal police reports and complaints.

After being arrested on May 27th, 2025 and spending two days in the horrible conditions of Travis County Central Booking based on charges from the Manor Police

Chief; email Stalking Charges against Relator were rejected on August 19, 2025, for insufficient evidence citing Owens v Texas, supporting retaliation claims.

Note that Plaintiff has been publishing an email Newsletter to local groups in Manor including the City Council and Staff, Chamber of Commerce, ManorISD, churches, police and others for over three years now. He is an Activist and a Political Cartoonist having a positive impact in the community. This case reveals harm to Plaintiff's Freedom of Speech and his Freedom of the Press constitutional guarantees.

Additional Unaddressed Motions regarding Facts are attached as Exhibit A and included by reference herein.

**H. ARGUMENT**

Mandamus issues when (1) a clear abuse of discretion exists, (2) relator has a clear legal right to performance of a ministerial act, and (3) no adequate appellate remedy exists. Walker v. Packer, 827 S.W.2d 833 (Tex. 1992). Respondents' inaction and the 459th District Court's nine-month delays violate statutory timelines (Tex. Elec. Code § 232.012) and due process, with no remedy via appeal given irreparable harms (e.g., demolitions, election invalidity). Dismissed parties' persistent harms (e.g., land misappropriation, historic desecration) necessitate this Court's intervention via Special Master or direct jurisdiction, bypassing the incapable trial court. Remedies align with precedents: (a) Special Master for fact-finding/oversight, (b) this Court's original action, (c) neutral venue/jury trial—no remand to the 459th.

**1. Election Contest**: Respondents abused discretion by failing to investigate/oversee the 2024 Manor election despite certified protests (Aug. 2, 2025, to Nelson; Aug. 28, 2024, to Paxton), leaving fraud (ballot denial, coercion) unaddressed and the City without quorum. Tex. Elec. Code §§ 31.003, 273.001 mandate oversight; § 232.012 demands expedited trial within 10 days of answer—ignored here.

Furthermore, Attorney General Paxton's office improperly determined that Secretary of State Nelson need not reveal results of any mandated investigation into Relator's election coercion allegations, without confirming an investigation's existence, violating transparency duties under Tex. Gov't Code § 552.001 et seq. (Public Information Act) and due process. Dismissed parties (e.g., City of Manor) perpetuate harm via successors' actions. In re Hotze, 627 S.W.3d 642 (Tex. 2020), supports extraordinary jurisdiction. Remedy: (a) Special Master investigates fraud (Bush v. Gore, 531 U.S. 98); (b) this Court orders new election/hears evidence (TRAP 52); (c) transfer to neutral county (e.g., Bexar) for trial; (d) enjoin Respondents to release all investigation-related information immediately.

**2. Sovereign Immunity**: Dismissals do not bar relief where ultra vires acts persist. City of El Paso v. Heinrich, 284 S.W.3d 366 (Tex. 2009), allows claims against officials for illegal acts; Ex parte Young, 209 U.S. 123 (1908), permits injunctions against unconstitutional conduct. Real parties (e.g., developers, City successors)

continue misdeeds (e.g., eminent domain misuse), despite trial court's indifference. Remedy: (a) Special Master sorts ultra vires facts; (b) this Court strips immunity directly; (c) neutral fact-finding.

**3. Historic Protections and Cemetery Desecration**: Ongoing demolitions of Black cemeteries and the 1840 Manor homestead violate public interest. Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978), and City of Dallas v. Stewart, 361 S.W.3d 562 (Tex. 2012), limit such actions; Tex. Gov't Code § 2206.001 requires just compensation; Tex. Health and Safety Code § 711.010 prohibits disturbance without authorization. Dismissed parties' successors perpetuate desecration, unaddressed by the 459th. Remedy: (a) Special Master surveys sites/emergency oversight (Ruiz v. Estelle, 679 F.2d 1115); (b) this Court issues TROs/precedents and orders GPR survey; (c) neutral mandate.

**4. Real Estate Misappropriation**: Public lands (parks, plazas) misappropriated via 380 agreements breach the public trust doctrine. Illinois Central R.R. v. Illinois, 146 U.S. 387 (1892), and Tex. Loc. Gov't Code § 253.001 (voter approval needed) apply. Dismissed City and developers' successors maintain empty parks despite $105M funds ($35M unrestricted). Remedy: (a) Special Master accounts for swaps; (b) this Court declares actions ultra vires; (c) neutral relief/damages trial.

**5. Reparations for Lack of Services**: 20+ years of denied services to Old Manor

residents violate equal protection. Hawkins v. Town of Shaw, 437 F.2d 1286 (5th Cir. 1971), and Milliken v. Bradley, 433 U.S. 267 (1977), support remedies for neglect. Dismissed parties' systemic failures persist via successors. Remedy: (a) Special Master calculates baseline; (b) this Court remands damages to neutral jury; (c) neutral tribunal.

**6. Austin Bocce League Breach**: Proprietary contract breach waives immunity. City of Houston v. Williams, 353 S.W.3d 128 (Tex. 2011), allows claims. Dismissed City's successors ignore the agreement. Remedy: (a) Special Master assesses reliance/damages; (b) this Court affirms breach; (c) neutral jury quantification.

**7. Damages Determination**: Jury required for legal claims. Curtis v. Loether, 415 U.S. 189 (1974), and Tex. Const. art. I, § 15 guarantee this. Dismissed parties' actions affect damages scope. This Court cannot assess but must ensure jury trial in neutral venue.

**8. Jury Trial for Outstanding Issues**: Factual disputes (damages, discrimination) demand jury. Beacon Theatres v. Westover, 359 U.S. 500 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), preserve this right. Dismissed parties' ongoing harms heighten need. Remedy: (a) Special Master prepares facts; (b) this Court sets neutral jury; (c) direct equitable relief by Court.

**9. Release of Election Investigation Information**: Respondents' refusal to

15-25-00142-CV

disclose investigation results or confirm its existence, as determined by Paxton's office, constitutes an abuse of discretion and violates Relator's rights under the Texas Public Information Act (Tex. Gov't Code § 552.001 et seq.) and due process. No discretion exists to withhold such public information absent valid exemptions, which are not applicable here. Remedy: (a) this Court enjoins Respondents to immediately release all related records; (b) Special Master verifies compliance; (c) neutral oversight if needed.

**10. Onerous FOIA Costs for Manor Police Records**: The exorbitant $3,625.64 cost estimate for Relator's FOIA request to Manor Police, based on 200 hours, is an obstructive tactic against a pro se pauperis litigant, prompting Relator's complaint to the Attorney General. Respondents have ministerial duties under Tex. Gov't Code § 552.269 to investigate such complaints and ensure reasonable access (e.g., via waiver or reduction). Dismissed parties' successors (e.g., City of Manor) perpetuate coverups through such barriers. Remedy: (a) compel Respondents to investigate the complaint and order cost waiver/reduction; (b) Special Master reviews records for relevance; (c) this Court declares the estimate invalid and mandates free or nominal-cost disclosure. Commence Discovery.

This Court's equity powers and the conundrum of dismissed yet unresolved and non-existent remedies justify immediate action, echoing In re Triantaphyllis, 68 S.W.3d 861 (Tex. App.—Houston [14th Dist.] 2002).

– See Exhibits M – O regarding dismissals of Relator's criminal charges

Exh L shows wrong email addressed use that caused harms to Relator and community.

## J. RULE 171. MASTERS IN CHANCERY

In the alternative, and to ensure a fair, transparent, and structured adjudication of the multifaceted issues presented, Relator invokes Texas Rule of Civil Procedure 171, which authorizes the appointment of a Master in Chancery in "exceptional cases" for "good cause." This case presents precisely such exceptional circumstances—complex constitutional, administrative, and social policy issues that overlap and resist efficient adjudication by the trial court alone.

Given the breadth and sensitivity of the matters at issue, Relator respectfully requests that, if mandamus is not granted outright, this Court direct the trial court to appoint three separate Masters in Chancery, each with narrowly tailored jurisdiction, including but not limited to:

1. One Master to oversee and investigate all claims related to Election Irregularities, Police Coverups, and ensuing impact/reversals of civic actions, including those due to lack of legal quorum—ensuring that evidence is properly compiled, witnesses are examined, and factual findings are developed for the Court's review and NEW

ELECTION commences in expedited fashion, with additional protections as outlined in Plaintiff original Amended Petition;

2. One Master to manage matters pertaining to Parks and Recreation and Land Trusts, including the lawful handling of parkland dedications, developer obligations for plazas and open spaces, and compliance with statutory restrictions such as Tex. Loc. Gov't Code § 253.001 including holding townhalls and approving/distributing funds to contractors for building amenities and having program activities;

3. One Master to act as caretaker of the Historic District of Old Manor (established 2017) and to oversee matters related to Reparations, including preservation of historic properties, review of demolition or redevelopment affecting protected sites, and the development of equitable remedies to address systemic harms due to decades of neglected roads, sidewalks, drainage, sewer, parks, activities, as City of Manor took tax monies from owners, rentors and residents and delivered services elsewhere.

This structure ensures that each Master's expertise and attention is primarily devoted to a discrete, critical domain, avoiding overlap and ensuring public confidence in the process. The Supreme Court's decision in Simpson v. Canales, 806 S.W.2d 802 (Tex. 1991) emphasizes that Rule 171 appointments are justified only in truly extraordinary circumstances; likewise, the First Court of Appeals in Orsak v. Chase Manhattan Mortgage Corp., 2006 WL 667482 (Tex. App.—Houston [1st Dist.] 2006, no pet.)

15-25-00142-CV

reaffirmed that "good cause" and exceptional conditions must exist, beyond ordinary complexity or docket congestion. Here, the interlocking constitutional, public trust, and preservation issues far exceed ordinary litigation and demand the safeguard that Rule 171 provides.

Each Master, under the Court's direction, would have defined powers: to receive and weigh evidence, administer oaths, hear witnesses, rule on evidentiary and procedural matters, and prepare findings and recommendations—subject always to the trial court's authority to confirm, modify, or reject those recommendations. By dividing responsibilities across election integrity, parkland and land trust stewardship, and historic district preservation, this Court can ensure that no single domain overwhelms another and that all claims are addressed thoroughly, fairly, and efficiently.

## J. PRAYER FOR RELIEF

Compel Respondents to oversee new election/investigate. Enjoin Respondents to release all information related to any election investigation, including confirmation of its existence and full results. Compel Respondents to address Relator's complaint regarding onerous FOIA costs for Manor Police records, including investigation, waiver/reduction of costs, and release of the records. Exercise original jurisdiction: Appoint Special Master/tribunals for fact-finding/oversight; conduct direct hearings; declare invalid election, pierce immunities, issue injunctions; set jury trial in neutral venue. Order

eService/notice to all real parties in interest, including dismissed defendants, to address persistent harms. Award costs/equitable relief.

Respectfully submitted,

_____/s/ Robert Edward Battaile_____

Robert Edward Battaile, Appellant Pro Se

502 E Eggleston St Unit B
Manor TX 78653
512-662-2955

robert@manortx.us

## COMPLIANCE CERTIFICATE

I, Robert Edward Battaile, certify that this petition complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4(i)(2)(B), containing approximately 4,031 words, excluding the parts exempted by Rule 9.4(i)(1). The document was prepared using OpenOffice Writer with a proportionally spaced typeface (Times New Roman, 14-point font). I further certify that a copy of this petition has been served on all parties via the Court's electronic filing system on August 25, 2025, at 11:25 PM CDT, as required by Rule 9.5. and by Certified mail to new parties as noted.

_____/s/ Robert Edward Battaile_____

Robert Edward Battaile, Appellant Pro Se

**CERTIFICATE OF SERVICE**

I certify that on August 25, 2025 at approximately 11:25 CDT, a true and correct copy of this petition was served on all counsel of record and appellees via the Court's electronic filing system; as well as by certified mail to:

a) DG Manor Downs Property Owner LP, Attn: Josesph Walker, General Counsel Dalfen Industrial, 17304 Preston Rd, Ste. 550, Dallas, TX 75252; and

b) MAQIL, Inc. - P O Box 399, Manor TX 78653; and

c) Texas A&M Foundation, Attn: Will Fusselman, Vice President and General Counsel, 401 George Bush Dr., College Station, TX 77840.

.

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Appellant

**EXHIBIT A – Petition for Writ of Mandamus – Unaddressed Motions**

These are Motions unaddressed and unresolved by the 459th Court:

1. All the Historic Preservation Injunctions for Temporary Restraining Orders;

2. Motion to Reconsider Recusal of Judge Soifer;

3. Motion to Compel Transcripts – some illegible or missing;

4. Motion for Reparative Damages;

5. Motion to Waive Immunity;

6. Motion to Strike Dismissals on Unaddressed Claims;

7. Motion to enforce Spanish language use in city communications;

8. Motion for Judicial Continuity

9. Motion to Award Damages to Bobby Reese

10. Motion to Compel Public access to Parkland;

11. Motion to Compel Discovery and Attorney General response;

12. Motion to Validate Election Filing Equitable Tolling;

13. Motion to Compel Damages to Austin Bocce League;

14. Motion to Investigate Chapter 380 Misuse;

15. Motion to Set Aside Election Certification;

16. Motion for Findings of Fact / Conclusions of Law;

17.     Motion for Sanctions Against City Mayor;

18.     Motion to Void City Concil Decisions for Lack of Legal Quorum;

19.     Motion for Judicial Review of Courts of No Record;

20.     Motion for Emergency Relief Pending Appeal;

21.     Motion to Quash Retaliation Warrant [Plaintiff was arrested. State dismissed the felony email "stalking" charges due to "lack of evidence. Plaintiff has a Sept 8 hearing in Travis County to Quash the Travis County charges against Plaintiff;

22.     Motion for Sanctions for Ethics Commission supression;

23.     Motion to Preserve Claims for Appeal;

24.     Motion to Compel Enforement of Historic Preservation;

25.     Motion to Enforce Use of Public Trust Parkland;

26.     Motion for Old Manor Reparations or Tribunal;

27.     Motion for Parks and Recreation Tribunal;

28.     Motion to Consolidate under Rule 2;

29.     Motion to Void improper hearings not noticed to Plaintiff;

30.     Motion to Strike Language from Judicial Orders; and to include other wording.

**EXHIBIT B. CANDIDATES FOR SPECIAL MASTERS OF CHANCERY:**

Due to the extraordinary complexity, overlapping jurisdictions, and constitutional implications presented in this case, Plaintiff requests the Court appoint a Special Master or Masters pursuant to Rule 171 to assist the Court with factual review, management of unruled motions, and preliminary findings on civil rights, public trust, and land-use matters; and not simply remand this to the 459th District Court which has proven they are not capable of handling this litigation in a fair and thorough manner.

**A. ELECTION CONTEST, Police Misconduct, Lack of Legal Quorum, Civic inconsistencies, ethics violations.**

**1. The Honorable Orlinda Naranjo (Retired)**

Former Presiding Judge, 419th District Court (Travis County); served also on the Texas Judicial Council and Commission on Judicial Conduct. Widely respected for her ethical leadership and procedural diligence in high-volume civil dockets.

https://www.austinbar.org/?blAction=showEntry&blogEntry=74029

**2. Professor David A. Anderson (Emeritus, UT Law)**

Renowned constitutional law scholar and media law expert. Held the Wulff Centennial Chair at UT Law. Experienced in constitutional harms, torts, and First Amendment procedure.https://law.utexas.edu/faculty/david-a-anderson

**3. Justice Harriet O'Neill (Retired)**Former Texas Supreme Court Justice, also

served on the 14th Court of Appeals and 152nd District Court. Chaired multiple judicial reform bodies including the Access to Justice Commission.

https://en.wikipedia.org/wiki/Harriet_O%27Neill

**Plaintiff further requests the formation of two Tribunal Panels:**

**B. Parks & Recreation Public Trust Tribunal**

To assess claims regarding misuse of parkland dedication fees, illegal conveyances, lack of services in historically underserved areas (e.g., Old Manor), and access barriers.

**4. Charles Bergh (Retired)**

Former Travis County Parks Director with 45+ years in public lands, development of over $230M in capital improvements, and acquisition of 12,000+ acres of parkland.https://www.austinoutside.org/board-of-directors

**5. Kim Mickelson (Retired)**

Attorney and planner specializing in land use, municipal equity, and community development. Longtime member of the Texas chapter of the American Planning Association.https://txgovernmentlaw.org/council/kim-mickelson

**C. Reparations & Historical Justice Tribunal**

To consider allegations of desecration of historic Black cemeteries, misappropriation

of historical sites, exclusionary zoning practices, and denial of equal services and political access.

**Suggested Members:**

**(2 above) Professor David A. Anderson (Emeritus)** (also listed above)

Neutral academic voice with legal expertise on structural exclusion, free speech, and public information access.

**(3 above) Justice Harriet O'Neill (Retired)** (also listed above)

Recognized for statewide equity and reform leadership, retired from partisan obligations, and experienced in rights-based litigation.



MANOR CEMETERY • Est. 1871 • facing West

Proposed "Junction at Manor" • 95 Townhomes

Developer's Cooper's Square townhomes shown for illustration

Robert simulates the cemetery-facing 2-story townhomes using one of the builder's other projects. Some of these will be 3-story. 95 in total that have no business in a 'historic district.'

City has been mowing developer's property for two years maybe. That's a mis-use of city funds. City was paid $1.83 per sq ft for R.O.W. alleys, culverts & easements; yet city BOUGHT elsewhere at $18 per sq. ft.



MANOR CEMETERY IS LOCATED HERE

95 Townhomes going in here

**Wayne Schneider**
3h · 🌐

Robert Battaile For anyone who might now know exactly what land is being talked about, here are a couple of pictures. The top one is a close up of the northeast corner of the 38.75 acres in the A.E. Lane addition to the original town of Manor (From Travis County Clerk Records, Plat Record 1-2, page 223) showing the land purchased by Martin McVay in 1906. The bottom photo is showing where that land is located in relation to the Manor Cemetery of today. Only 17 feet away.

Lillies or Irises outside cemetery fence ~ Dan Scarbrough points out rectangular beds easily seen. This is a black person's grave. Manor Cemetery was "whites only" until 2004.




Manor Downs

Manor Downs







AMPHITHEATER

PARKING LOT

Music

SCALE: 1 INCH = 200FT

BUILDING 1
AREA 317,520 SF
FFE = 559.0'

BUILDING 2
AREA 224,640 SF
FFE = 547.5'

BUILDING 3
AREA 498,960 SF
550.5

BUILDING 4
AREA 196,960 SF
FFE = 564.5'

BUILDING 5
AREA 90,720 SF
FFE = 563.5'

BUILDING 6
AREA 136,080 SF
FFE = 562.5'

LOT 1
37 AC

LOT 2
20 AC

LOT 3
38 AC

LOT 4
16 AC

LOT 5
9 AC

LOT 6
16 AC

PARKLAND
DEDICATION
LOT 7
9 AC

PHASE 1
PHASE 2
PHASE LINE

MURRAY DALFEN DRIVE

HILL LANE
(VARIABLE WIDTH R.O.W.)

PROPERTY BOUNDARY

CHANNEL

PROPOSED 15' WATERLINE EASEMENT

15' PROPOSED WATERLINE EASEMENT

150' ATMOS GAS EASEMENT

100' ATMOS GAS EASEMENT VOL. NO. 2024118970

APPROX. LOC. PIPELINE & APPURTENANCES

30' ACCESS EASEMENT VOL. 11586 PG. 852

METER R.O.W. EASEMENT DOC NO. 2014106596 DOC. NO. 2003091782 29.76'

15' PROPOSED WASTEWATER EASEMENT

15' WASTEWATER EASEMENT

PROPOSED VARIABLE WIDTH DRAINAGE EASEMENT

15' DRAINAGE EASEMENT

15' R.O.W. EASEMENT VOL. 4823, PG. 1881

30' ELECTRIC EASEMENT VOL. 11345 PG. 87

5' SIDEWALK

CURB, GUTTER, SIDEWALK ADA RAMP BY OTHERS

PROPOSED ACCESS EASEMENT DOC. NO.

60' AWU EASEMENT DOC. NO.

20' WASTEWATER/UTILITY EASEMENT TO BE GRANTED BY DALFEN TO DR. MEHTA.

EXISTING WATERLINE

20' MANVILLE WATERLINE EASEMENT TO REMAIN NO 2023045175 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY

15' PIPELINE & APPURTENANCES EASEMENT VOL. 11074 PG. 559 VOL. 11074 PG. 569 DOC NO. 2011042154 & DOC. NO. 201147986

EXISTING GAS LINE

30' BLUEBONNET ELECTRIC EASEMENT

BLUEBONNET ELECTRIC EASEMENT

±14.87' BLUEBONNET ELECTRIC EASEMENT

EXISTING CULVERT

AWU EASEMENT

VARIABLE WIDTH WASTEWATER EASEMENT

VARIABLE WIDTH WASTEWATER EASEMENT

VARIABLE WIDTH AWU EASEMENT

PROPOSED HILL LANE R.O.W.

EXISTING CULVERT

EXISTING WATERLINE

EXISTING OVERHEAD ELECTRIC LINE

15' R.O.W. EASEMENT VOL. 4823 PG. 1881

CURB, GUTTER, SIDEWALK ADA RAMP BY OTHERS

LEGEND
BOUNDARY LINE
R.O.W.
BUILDING SETBACK
EASEMENT LINE
LOT LINE
EXISTING WASTEWATER LINE
EXISTING WATER LINE
EXISTING OVERHEAD UTILITY
EXISTING STORM DRAIN
EXISTING ATMOS GAS LINE
EXISTING CURB & GUTTER



V:\070422 - Dalfen Industrial\070422-01-002 (ENG) - Manor Downs Industrial\Engineering\Landscape Design\02 Drawings\Sheets\070422-01-002 SP-B_TREE PRESERVATION.dwg, 52 TREE PRESERVATION PLAN - 4 OF 4,  August 18, 2025, 5:55 PM, dsharkey

MATCHLINE - SHEET 16

MURRAY DALFEN DRIVE (1)

Know what's below.
Call before you dig.

SHEET INDEX MAP

TREE PROTECTION FENCING (TPF)

PROTECTED TREE REMOVAL

LEGEND

SCALE: 1 INCH = 40 FT

PROPERTY BOUNDARY LINE
FLOW
EASEMENT LINE
CREEK CENTERLINE
FIRE LINE
WATER MAIN LINE
FORCE MAIN LINE
CURB AND GUTTER
CURB INLET
GRATE INLET
MANHOLE
WATER METER
WATER VALVE
FIRE HYDRANT
BACKFLOW PREVENTER
PAD MOUNTED TRANSFORMER
EXISTING TREE
EXISTING TREE TO BE REMOVED
LIMITS OF CONSTRUCTION
PROPOSED SIDEWALK

TREE PRESERVATION PLAN - 4 OF 4

MANOR DOWNS INDUSTRIAL - SITE PLAN B
8500 HILL LN
MANOR, TEXAS, 78653

REVISIONS

| REVISION | DESCRIPTION | DATE |
|---|---|---|
| --- | --- | --- |

DESIGN MC
DRAWN MG
CHKD MK

JOB No. 070422-01-002

SHEET 61 OF 62

Bowman
© 2024 Bowman Consulting Group Ltd
TBPE Firm Registration No. F-14309

807 Las Cimas Parkway          Phone: (512) 327-1180
Suite 350                              Fax: (512) 327-4062
Austin, Texas 78746               www.bowman.com

PRELIMINARY NOT FOR CONSTRUCTION



Manor Downs Industrial Park
Annexation into the City of Manor

April 2024


# Site Plan

Dalfen Industrial is proposing the annexation of 1,247,560 SF of industrial space, across 6 buildings, into the City of Manor



Plans subject to change



# City of Manor Boundaries



Current City of
Manor Boundary

Plans subject to change



# Proposed Howard Lane Extension



Plans subject to change



## Proposed Future Community Area (to be developed by City of Manor)





## Annexation LOI Terms

1.  **Taxes Abatement** – The City will review a tax abatement for the property once the results of the Economic Impact Study are available.
2.  **Wetland/Environmental Features** – The City will acknowledge that it has reviewed the environmental report (the "Bowman Report") provided by Bowman Consultants and accepts the findings of The Bowman Report.  The City will acknowledge there are no other environmental features that will affect permitting or the development other than those defined in the Bowman Report.
3.  **Cut/Fill** – The City will acknowledge there are no restrictions to the amount of cut/fill required to develop the site.
4.  **Floodplain** – The City will acknowledge that there is no active floodplain on the property as defined in the FEMA flood maps.
5.  **TIA** – The City will acknowledge that a TIA is not necessary given the amount of road improvements included by the Property.  The City agrees to allow the Owner to dedicate the North-South connector road to the city after completion and acceptance of the road.
6.  **Sewer** – The City will, in the event that the Property is released/removed from the City of Austin wastewater service area, provide wastewater through the City as defined in the feasibility study (the "Feasibility Study").
7.  **Permit Review** – The City will expedite permit review for the project and agree to provide approval to begin grading no later than 90 days after approval of the Annexation.



# Dalfen Industrial Overview



# Dalfen's History

## Founded as a family apparel retail chain in the 1930s and has been exclusively focused on industrial real estate since 2010

**1935**

Focus shifted exclusively to U.S. commercial real estate

**2006 -2008**

Focus shifted exclusively to industrial real estate; Launch of Fund I

**2013**

Launch of Fund III

**2018**

Launch of Fund V

Dalfen's Limited was founded as a family apparel retail chain by Joseph Dalfen

**1992**

Profitably divested most of U.S. portfolio, selling $150M of commercial real estate

**2010**

Launch of Fund II

**2016**

Launch of Fund IV

**2022**



*Tacoma Supply Chain Center, Fund IV, Seattle, WA*



*Turnpike Logistics Center, Fund IV, West Palm Beach, FL*



*Interstate Park Logistics Center, Fund IV, West Palm Beach, FL*

*For institutional use only, not for use with retail investors*



# Seasoned Management Team

## Fully Vertically Integrated Platform with 85+ Employees Nationwide

## Dalfen's Executive Team[1]


**Murray Dalfen**
Chairman


**Sean Dalfen**
CEO


**Fred Tkalec**
CFO


**Max Gagliardi**
CIO


**Mariam Ghoul**
MD, HR
& Operations


**Joseph Walker**
General Counsel
& CCO


**Shelly Drakes**
EVP, Property
Management


**Mike Cohen**
Head of
Acquisitions


**Christine Moore**
Head of
Leasing


**Alex Steele**
SMD,
Sales

**Overseeing dedicated in-house teams across disciplines** [1]


**23**
Accounting /
Finance
Professionals


**15**
Asset / Property
Management
Professionals


**5**
Capital Markets
Professionals


**17**
Acquisition/
Development
Professionals


**8**
Administrative
and HR
Professionals


**2**
Legal
Professionals

| 11 Offices Across North America | 87+ Employees | ~Exec. Tenure 12 Years[2] | ~$4 Billion AUM[3] | ~55M SF Invested Across Dalfen Platform[4] |
|---|---|---|---|---|

9



# Dalfen's Competitive Advantage

Represents Dalfen Office

**Vertical Integration**

- ✓ Local expertise with 11 offices across North America

- ✓ Fully staffed deal sourcing, development, asset and property management capabilities across the country



# The Following Tenants are Clients of Dalfen Industrial





















*Representative client list and subject to change.*
*For institutional use only, not for use with retail investors...........*



DALLAS | MONTREAL | DENVER | ORLANDO | ATLANTA | BAY AREA

AUSTIN | CHICAGO | CINCINNATI | PHILADELPHIA

WWW.DALFEN.COM          IR@DALFEN.COM

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

 26 pgs    2023092996

# CONSTRUCTION AGREEMENT
## Manor Downs

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

This CONSTRUCTION AGREEMENT—MANOR DOWNS ("**Agreement**") is made and entered into by and between DG Manor Downs Property Owner, L.P., a Delaware limited partnership, (the "**Developer**") and Travis County, Texas, a political subdivision of the State of Texas, (the "**County**"), hereinafter collectively referred to as the "Parties," for the purposes and consideration stated herein.

**WHEREAS**, the Developer owns or controls that certain 146.94-acre tract of real property, more particularly described in **Exhibit "A"**, which is attached hereto and made a part hereof (the "**Property**"), and the Property is depicted in the Location Map for the site location along Hill Lane, which is East of SH 130 and Northwest of US 290, a copy of which is attached hereto as **Exhibit "B"**; and

**WHEREAS**, the Developer desires to develop the Property and is seeking a preliminary plat under Travis County File Number C8J-2023-0081 and final plat for the development of the Property called "Manor Downs" to develop warehouse/industrial buildings; and

**WHEREAS**, the development of the Property will impact the area's transportation system; and

**WHEREAS**, the Developer submitted a Transportation Impact Analysis dated September 23, 2022 (the "**TIA**") for the Property, and the TIA was accepted by the County on September 23, 2022; and

**WHEREAS**, the TIA identifies mitigation measures that the Developer is legally obligated to satisfy, and the Parties agree to modify the roadway improvements the Developer shall design and construct; and

**WHEREAS**, the County desires to set forth the Developer's responsibility for designing, constructing and dedicating the following road improvements consisting of Manor Downs Road from Hill Lane northward to the edge of Developer's Property, which will be designed as an MNR-2 roadway section per Figure 1-34A in the Travis County TIA guidelines, as depecited in the attached **Exhibit "C"**, hereinafter referred to collectively as the "**Road Improvements**";

**WHEREAS**, the County requires the Developer post a bond, cash, or letter of credit in the amount of $2,368,849.00, representing the Developer-estimated cost of constructing the Road Improvements, to ensure that the Road Improvements are constructed (the "**Fiscal Security**");

**WHEREAS**, the Developer desires to set forth the County's responsibility to accept the constructed Road Improvements and, upon acceptance, release the Fiscal Security;

**NOW, THEREFORE**, the Parties agree as follows:

**I.   Developer's Obligations**

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

A. Road Improvements. The Developer shall construct the Road Improvements consistent with the requirements set forth by the Travis County standards, Chapter 482, Travis County Development Regulations (the "**Standards**").

B. Security. To secure the Developer's obligations, the Developer will provide, prior to the approval of the Final Plat, the Fiscal Security which shall serve as a financial guarantee of performance in a form acceptable to the County and is the estimated cost of designing and constructing the Road Improvements, and which has been determined by a professional engineer and approved by the County's Transportation and Natural Resources Department ("**TNR**").

C. Design and Construction of Road Improvements. Developer shall construct the Road Improvements within twenty-four (24) months of issuance of the site development permit for the Road Improvement.

D. Warranty. The Developer warrants the Road Improvements will be free from defects for a period of one (1) year from the date the Road Improvements become operational and are accepted by the County (the "**Performance Period**"). The Developer shall correct and repair any defects in materials or workmanship, including design inadequacies and damage to or deterioration of the Road Improvements that occur before and during this Performance Period due to any design or construction defect.

E. Performance Period Security. As a condition of the County's acceptance of the Road Improvements, the Developer must post fiscal security in the form of cash, a performance bond, or other approved form and in the amount of $236,884.90, which equals ten percent (10%) of the cost of constructing the Road Improvements (the "**Performance Period Security**"), to secure the warranty established by this Agreement. At the time of acceptance of the Road Improvements, the County, in lieu of requiring a separate fiscal security for the warranty, will, at the request of the Developer, reduce the Fiscal Security to $236,884.90, which equals ten percent (10%) of the cost of constructing the Road Improvements, and retain this sum as fiscal security for the warranty. It is expressly acknowledged that the Road Improvements must be free of known design and construction defects at the end of the one (1) year Construction Performance Period in order for the County to release the construction performance fiscal security.

F. Covenant, Restriction, and Condition. In the event that the Road Improvements are not constructed to the Standards and the required Fiscal Security has expired, the Developer shall not sell, transfer, or convey any of the lots in the Property until the Road Improvements have been constructed to the Standards, unless the transferee of such lot assumes responsibility to construct the Road Improvements to the Standards.

G. The Developer shall provide an executed counterpart of this Agreement and the Fiscal Security to the County prior to the approval by the County of the Final Plat.

## II. County's Obligations

A. Inspection and Approval. The County will inspect the Road Improvements at the completion of construction. If the Road Improvements are completed in accordance with the Standards, the County will approve and accept the Road Improvements.

2

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

B. Notice of Defect. The County will notify the Developer, if an inspection reveals that any portion of the Road Improvements is not constructed in accordance with the Standards or is otherwise defective. However, the County is not responsible for the construction of the Road Improvements, the quality of the material, or the construction methods utilized. In addition, the County is not responsible for making continuous on-site inspections of the construction work and the County has no privity with or responsibility for the construction contractor or any subcontractors. The Developer will have thirty (30) days from such notice to commence curing the defect and will diligently pursue the cure thereof to completion. It is an event of default under this Agreement, if the defect is not cured prior to the expiration of the time to cure.

C. Performance Period Security Release. Upon the expiration of the one-year Performance Period with no design or construction defects which the County Executive notifies the Developer must be corrected, the County Executive will release the Performance Period Security.

D. Conditions to Draw on Security. The County may draw upon any Security posted under this Agreement upon the occurrence of one or more of the following events:

   a. The failure of the Developer to construct the Road Improvements to the applicable Standards within the time period provided in this Agreement;

   b. The Developer's failure to renew or replace the Fiscal Security at least forty-five (45) days prior to its expiration;

   c. The acquisition of the Property or a portion of the Property by the issuer of the Fiscal Security or other creditor through foreclosure or an assignment or conveyance in lieu of foreclosure; or

   d. The arrangement by the Commissioners Court for the completion of the Road Improvements following a default by the Developer that is not cured within any applicable notice and cure period.

E. Notice of Intent to Draw. The County shall provide ten (10) days written notice of the occurrence of such an event to the Developer with a copy provided to any fiscal surety, lender, or escrow agent. The notice will include a statement that the County intends to provide for the performance of some or all of Developer's obligations hereunder for the construction of the Road Improvements, if the failure is not cured. The County shall be entitled to draw the amount it considers necessary to perform the Developer's obligations under this Agreement up to the total amount allocated for the Road Improvements. In lieu of a drawing based on an event described in subparagraphs (b) or (c), above, the County may accept a substitute Security and/or grant Developer additional time to complete the Road Improvements if Developer was delayed in completing the Road Improvements.

F. Use of Proceeds

   1. The County must utilize the proceeds of any posted security solely for the purpose of completing the Road Improvements to the Standards or to correct defects in or failures of the Road Improvements.

3

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

2. The County may in its sole discretion complete the unfinished Road Improvements at the time of default beyond any applicable notice and cure period, regardless of the extent to which development has taken place in the Site Plan or whether development ever commenced, without incurring any obligation to complete the unfinished Road Improvements. If the County uses the proceeds to complete, repair, or reconstruct the Road Improvements, it will do so as a public trustee of the development process in order to protect purchasers and taxpayers from the adverse consequences of a Developer default or to protect the public interest by completing the Road Improvements.

3. The County is not a private developer and its draft on the Security and utilization of the proceeds to complete, repair, or reconstruct the Road Improvements is not an acceptance of the dedication of the Road Improvements.

4. The Developer has no claim or rights under this Agreement to funds drawn under the Security or any accrued interest earned on the funds to the extent the same are used by the County hereunder.

5. All funds obtained by the County pursuant to one or more draws under the Security shall be maintained by the County in an interest-bearing account or accounts until such funds, together with accrued interest thereon (the "Escrowed Funds"), are disbursed by the County.

6. The County shall disperse all or portions of the Escrowed Funds when the Road Improvements are completed by the County, or in accordance with the terms of a written construction contract between the County and a third party for the construction of the Road Improvements.

7. Escrowed Funds not used or held by the County for the purpose of completing the Road Improvements or correcting defects in or failures of the Road Improvements, together with any interest accrued thereon, shall be paid by the County to the Developer, no later than sixty (60) days following the County's acceptance of the Road Improvements or its decision not to complete the Road Improvements using Escrowed Funds, whichever date is earlier.

G. <u>Releases</u>. The County Executive will, subject to the performance of the Developer of its obligations under this Agreement, execute such release of this Agreement as is necessary and reasonable upon the request of the Developer or a purchaser of a portion or all of the Property.

## III. Miscellaneous

A. <u>Covenants, Restrictions, and Conditions</u>. These Covenants, Restrictions, and Conditions will operate as covenants running with the land and will be binding upon the Developer and the Developer's legal representatives, successors and assigns.

B. <u>Measure of Damages</u>. The measure of damages for breach of this Agreement by the Developer is the actual cost of completing the Road Improvements in conformance with the Standards, including without limitation its associated administrative expenses.

4

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

C. Remedies. The remedies available to the County and the Developer under this Agreement and the laws of Texas are cumulative in nature.

D. Third-Party Rights. No non-party shall have any right of action under this Agreement, nor shall any such non-party, including without limitation a trustee in bankruptcy, have any interest in or claim to funds drawn on the posted Security and held in escrow by the County in accordance with this Agreement.

E. Indemnification. The Developer shall indemnify and hold the County harmless from and against all claims, demands, costs, and liability of every kind and nature, including reasonable attorney's fees, for the defense of such claims and demands, actually incurred and arising from any breach on the part of Developer of any provision in this Agreement, or from any willful misconduct or gross negligence of Developer or Developer's agents, contractors, employees, tenants, or licensees in the construction of the Road Improvements. The Developer further agrees to aid and defend the County, if the County is named as a defendant in an action arising from any breach on the part of Developer of any provision in this Agreement or from any willful misconduct or gross negligence of Developer or Developer's agents, contractors, employees, tenants, or licensees in the construction of the Road Improvements.

F. No Waiver. The waiver of any provision of this Agreement will not constitute a waiver of any other provision, nor will it constitute a continuing waiver unless expressly provided for by a written amendment to this Agreement. The County's failure to enforce any provision will not constitute a waiver or estoppel of the right to do so.

G. Attorney's Fees. The prevailing party in any litigation hereunder is entitled to recover its costs, including reasonable attorney's fees, court costs, and expert witness fees, from the other party. If the court awards relief to both parties, each will bear its own costs.

H. Successors and Assigns. This Agreement is binding on the Developer and any successors and/or assigns of the Developer and on any person acquiring an ownership interest in the Property through the Developer. The Developer's obligations under this Agreement may not be assigned without the written approval of the County; provided the County's approval shall not be unreasonably withheld if the Developer's assignee expressly assumes all obligations of the Developer under this Agreement. An assignment shall not be construed as releasing the Developer from Developer's obligations under this Agreement and Developer's obligations hereunder shall continue notwithstanding any assignment approved pursuant to this Paragraph unless and until the County executes and delivers to the Developer a written release. The County agrees to release the Developer, if the Developer's assignee expressly assumes the Developer's obligations under this Agreement and has posted the Security required by this Agreement. The County in its sole discretion may assign some or all of its rights under this Agreement and any such assignment shall be effective upon notice to the Developer.

I. Expiration. The Developer may terminate this Agreement by giving the County written notice of its election to terminate this Agreement no later than twenty-four (24) months after the date hereof provided that all the following conditions are true at the time such written notice of termination is given: (i) the Developer has not commenced physical construction of the Road Improvements; and (ii) the Site Plan permit has not been issued or it has been rescinded and is no longer valid to the extent it has been

5

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

previously issued. If this Agreement is terminated by the Developer in the immediately preceding sentence, the Fiscal Security shall be released to the Developer and neither the Developer nor the County shall have any further obligations under this Agreement. This Agreement will otherwise terminate upon the completion of the Developer's obligations under Articles I and II of this Agreement. The indemnity and covenants of the Developer under Article III, Section E of this Agreement will survive the termination of this Agreement for a period of two (2) years after this Agreement is terminated.

J.   Notice. Any notice under this Agreement must be in writing and will be effective when personally delivered or three (3) days after deposit in the U.S. Mail, postage prepaid, certified with return receipt requested, and addressed as follows:

Developer:      DG Manor Downs Property Owner, L.P.
                17304 Preston Road, Suite 550
                Dallas, Texas 75252
                817-797-7287
                tkraftson@dalfen.com

Copy to:        Pam Madere (Jackson Walker LLP)
                100 Congress Ave, Suite 1100
                Austin, TX 78701
                512-236-2048
                pmadere@jw.com

County:         Transportation & Natural Resources Department
                P.O. Box 1748 Austin, Texas 78767
                Attn: County Executive

Copy to:        Delia Garza
                Travis County Attorney
                P.O. Box 1748 Austin, Texas 78767

The Parties may change their respective addresses for notice to any other location in the United States in accordance with the provisions of this Paragraph.

K.   Severability. If any provision of this Agreement is held by a court to be illegal, invalid, or otherwise unenforceable, such illegality, invalidity, or unenforceability shall not affect the validity of any other provision and the rights of the parties will be construed as if such provision was never part of this Agreement.

L.   Jurisdiction and Venue. This Agreement concerns real property located in Travis County, Texas, and shall be governed and construed under Texas law. Venue for any action arising under this Agreement shall be exclusively in Travis County, Texas.

M.   Captions Immaterial. The captions or headings of the paragraphs of this Agreement are for convenience only and shall not be considered in construing this Agreement.

N.   Entire Agreement. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. Any oral representations or modifications concerning this Agreement shall be of no force or effect, except a subsequent written modification executed by both parties.

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

O. NO OFFICIAL, EMPLOYEE, OR AGENT OF THE COUNTY HAS ANY AUTHORITY, EITHER EXPRESS OR IMPLIED, TO AMEND, MODIFY, OR OTHERWISE CHANGE THIS AGREEMENT, EXCEPT PURSUANT TO SUCH EXPRESS AUTHORITY AS MAY BE GRANTED BY THE COMMISSIONERS COURT.

--- The remainder of this page is intentionally blank ---

This Agreement is executed as of the dates set forth below and is effective upon execution by the County.

**DEVELOPER:**

**DG MANOR DOWNS PROPERTY OWNER, LP, a Delaware limited partnership**

BY: Manor Downs REIT, LLC,
    a Delaware limited liability company
Its: Managing General Partner

By: _____
Name: Joseph Walker
Title: Authorized Signatory

ACKNOWLEDGEMENT

STATE OF TEXAS   §
COUNTY OF Dallas §

This instrument was acknowledged before me on the 25th day of July, 2023, by Joseph Walker, Authorized Signatory of Manor Downs REIT, LLC, a Delaware limited liability company, the Managing General Partner of DG MANOR DOWNS PROPERTY OWNER, LP, a Delaware limited partnership, on behalf of said limited liability company in the capacity stated herein.

Given under my hand and seal of office on July 25 _____, 2023.

[SEAL]

_____
Notary Public, State of Texas
My Commission Expires: 9/6/2026

MIRA LAFFERTON
NOTARY PUBLIC
STATE OF TEXAS
ID 124326595
EXP. 09-06-2026

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

TRAVIS COUNTY, a political subdivision of the State of Texas

DocuSigned by:

*Andy Brown*

Andy Brown, County Judge

Date: ___8/10/2023 | 8:31 AM PDT___

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

EXHIBIT A

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Dana DeBeauvoir, County Clerk
Travis County, Texas
Jul 16, 2021 04:44 PM          Fee: $74.00
2021159617
*Electronically Recorded

**NOTICE OF CONFIDENTIALITY RIGHTS - IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**SPECIAL WARRANTY DEED**

THE STATE OF TEXAS        §
                          §        KNOW ALL PERSONS BY THESE PRESENTS:
COUNTY OF TRAVIS          §

THAT, **MANOR DOWNS BUSINESS PARK LAND, LLC**, a Texas limited liability company ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash in hand paid by **DG MANOR DOWNS PROPERTY OWNER, L.P.**, a Delaware limited partnership ("Grantee"), whose address is 17304 Preston Road, Suite 550, Dallas, Texas 75252, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Grantor, has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL, and CONVEY unto Grantee, its successors and assigns, in fee simple, that certain tract of real property situated in Travis County, Texas, and described in Exhibit "A" attached hereto and made a part hereof for all purposes, together with all and singular the rights, privileges, hereditaments, and appurtenances pertaining to such real property, including any and all improvements and fixtures currently attached to and located thereon (the "Property").

This conveyance, however, is made and accepted subject to only those matters described in Exhibit B attached hereto and incorporated herein by this reference, but only to the extent the same are currently valid and enforceable against the Property (collectively, the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with all and singular, the rights and appurtenances thereto in anywise belonging, to Grantee and Grantee's successors and assigns forever; Grantor does hereby bind Grantor and Grantor's heirs, executors, administrators, legal representatives, successors, and assigns to warrant and forever defend, all and singular, the Property unto the Grantee and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, by through or under Grantor, but not otherwise, subject however, to the Permitted Exceptions.

GRANTOR HAS MADE NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, UPON WHICH GRANTEE HAS RELIED, AS TO THE CONDITION OF THE PROPERTY, THE FITNESS OF THE PROPERTY FOR ANY INTENDED USE OR PURPOSE, THE EXISTENCE OF ANY HAZARDOUS OR TOXIC MATERIALS IN OR ON THE PROPERTY OR ANY OTHER ENVIRONMENTAL CONDITION OF THE PROPERTY, THE AVAILABILITY OF UTILITIES OR OTHER SERVICES TO THE PROPERTY, THE WORKMANSHIP OR MATERIALS USED IN THE IMPROVEMENTS ON THE PROPERTY, OR THE PRESENT OR FUTURE INCOME THAT MAY BE GENERATED FROM THE PROPERTY, EXCEPT FOR THE WARRANTY OF TITLE SET FORTH IN THIS DEED (THE "DEED WARRANTY"), THE EXPRESS REPRESENTATIONS OR WARRANTIES WITHIN SECTION 8.1 OF THAT CERTAIN REAL ESTATE CONTRACT DATED MARCH 10, 2021 (THE "CONTRACT") BY AND BETWEEN GRANTOR AND GRANTEE, AS AMENDED AND ASSIGNED (THE "CONTRACT WARRANTIES"), AND THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THE CLOSING DOCUMENTS EXECUTED AND DELIVERED BY

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

~~2021169617 Page 2 of 13~~

EXECUTED to be effective the __16__ day of __July__, 2021.

**GRANTOR:**

MANOR DOWNS BUSINESS PARK LAND, LLC,
a Texas limited liability company

By: _____
Name: __Colin Armstrong__
Title: __Manager__

THE STATE OF TEXAS §
§
COUNTY OF TRAVIS §

This instrument was acknowledged before me on __July 14__, 2021, by __Colin Armstrong__
_____, __Manager__ of Manor Downs Business Park Land, LLC, a Texas limited liability
company, on behalf of said limited liability company.

ELIA H. BRAHAM
Notary Public, State of Texas
Comm. Expires 08-26-2021
Notary ID 2416479

_____
Notary Public in and for the State of Texas

After Recording, Return to:

Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Attn: Milos Markovic, Esq.

DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5

## EXHIBIT B – LOCATION MAP



DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5



DocuSign Envelope ID: 655B9F65-DC6F-4B01-8E9D-3CEA131338F5



EXHIBIT C

**RETURN**

Please return to:
Attn: **Commissioners Court Specialist - Gillian Porter**
**via interoffice mail**
Travis County Clerk's Office
Probate Courthouse

8/8/23 CG VS Item #21

Recorders Memorandum-At the time of recordation this instrument was found to be inadequate for the best reproduction, because of illegibility, carbon or photocopy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

**FILED AND RECORDED**
**OFFICIAL PUBLIC RECORDS**

Dyana Limon-Mercado, County Clerk
**Travis County, Texas**

**2023092996**     Aug 15, 2023 02:40 PM
Fee: $126.00          MARTIND

| THE STATE OF TEXAS | § | |
| COUNTY OF TRAVIS | § | |

THE STATE OF TEXAS §
§
§ **Chapter 380 Grant Agreement**
§ **Project – Manor Downs Commerce Center**
COUNTY OF TRAVIS §

**THIS CHAPTER 380 GRANT AGREEMENT** – Project – Manor Downs Logistics Center (hereinafter, this "Agreement") is executed by and between **DG MANOR DOWNS PROPERTY OWNER, L.P.**, a Delaware limited partnership (including its successors and assigns) duly authorized to do business in the State of Texas, (hereafter referred to as **"COMPANY"**) and the **CITY OF MANOR, TEXAS**, a home-rule city and municipal corporation of Travis County, Texas (hereinafter, the **"CITY"**)( CITY and COMPANY hereinafter sometimes referred to individually as a "Party" and collectively as "Parties").

**W I T N E S S E T H:**

**WHEREAS,** the CITY has established an Economic Development Policy (hereinafter, the "Policy") pursuant to Chapter 380, Texas Local Government Code, to provide for a grant of economic development incentives to new or expanding businesses in Manor under the terms and conditions of this Agreement; and

**WHEREAS**, the CITY has determined that the COMPANY qualifies for economic development incentives under the Policy, subject to the terms and conditions of this Agreement; and

**WHEREAS,** the Property is not located within a tax increment financing district;

**WHEREAS,** the COMPANY owns/leases the following described property: approximately 146.920 acres of property located in Travis County, Texas, being more particularly described in **Exhibit A** attached hereto and incorporated herein for all purposes (hereinafter, the "Property," and further defined herein); and

**WHEREAS,** the COMPANY made application to the CITY for an economic incentive related to the construction of four buildings that will total at a minimum 894,650 square feet square feet on the Property, with a COMPANY option to construct two additional buildings that will total an additional 487,944 square feet on the Property (hereinafter, the "Facilities," and further defined herein); and

**WHEREAS,** the COMPANY's application to the City provides that the anticipated construction cost (exclusive of land cost) of Phase 1 of the Facilities, as defined herein, shall be approximately $64,323,397 and that the anticipated construction cost (exclusive of land cost) of the optional Phase 2 of the Facilities, as defined herein, shall be approximately $36,238,046; and

**WHEREAS,** the construction of the Facilities, the relocation of the Company to the Property, and operation of the Business Operations on the Property will promote economic

development of the CITY, encourage businesses to locate and expand in the CITY, and increase opportunities for increased property tax and employment; and

**WHEREAS,** the Parties agree that the COMPANY must fulfill its obligations under this Agreement in order for the CITY to pay the Chapter 380 Grant (herein defined); and

**WHEREAS,** Chapter 380 of the Texas Local Government Code provides statutory authority for granting the economic incentives and administering the Policy provided herein; and

**WHEREAS,** the City Council finds that it is in the public interest to provide the economic incentives set forth herein subject to the terms and conditions of this Agreement.

**NOW THEREFORE**, the CITY and the COMPANY, for and in consideration of the mutual premises and promises contained herein, the receipt and sufficiency thereof is hereby acknowledged, do hereby agree, covenant and contract as set forth below:

## I.
## Definitions

A. "**Business Operations**" refers to the COMPANY'S business operating on the Property.

B. "**Calendar Year**" means the twelve month period of time that begins on January 1st and ends on December 31st of the same numbered year.

C. "**Chapter 380 Grant**" is defined as the economic incentive payment further described in Article V, not to exceed the Maximum Grant Amount.

D. "**Certificate of Occupancy**" means the final certificates of occupancy issued by the CITY for the shell and core buildings of the Facilities.

E. "**Eligible Property**" is defined as the Property, all real property improvements affixed to the Property, and business property located thereon.

F. "**Facilities**" means four buildings that total a minimum of 894,650 square feet (hereinafter sometimes "Phase 1"), and, at the COMPANY'S option, two additional buildings that total a minimum of 487,944 square feet (hereinafter sometime "Phase 2"), suitable for the Business Operations, constructed on the Property in accordance with the CITY-approved plans, and applicable local, state, and federal regulations, out of which the Business Operations will be conducted.

G. "**Grant Criteria**" is defined as the criteria set forth in Article IV that the COMPANY must meet to receive the Chapter 380 Grant defined in Article V.

H. "**Maximum Grant Amount**" shall mean the total amount of payments paid to COMPANY under this Agreement, whether by Real Property Tax Rebate, reimbursement of wastewater impact fees, or combination thereof, in the schedule provided in Section V.A.1 herein and in an amount not to exceed $5,693,953 for Phase 1, and $8,907,771 for

2

Phase 1 and Phase 2 combined. The terms, "Phase 1," and, "Phase 2," are defined and described in greater detail in Section IV.A hernbelow.

I.   "**Ongoing Documentation**" is defined as copies of the following documents for the tax year for which a Chapter 380 Grant is sought: (1) proof of compliance with Section IV.B.-D.; and (2) proof of payment ad valorem taxes and wastewater impact fees actually paid. The CITY may reasonably request additional records to support the information shown in the Ongoing Documentation and compliance with the applicable Grant Criteria.

J.   "**Ongoing Grant Criteria**" is defined as the criteria the COMPANY is required to meet for payment of Chapter 380 Grants after Year 1, which are set forth in Section IV.A.2.

K.   "**Premises**" are defined as the real property (land and improvements) located on the Property.

L.   "**Project**" is defined to mean the Facilities, together with all other accessory and permitted uses on the Property, upon which the Business Operations will be conducted.

M.   "**Property**" is defined as that certain 146.920 acre tract, being more particularly described in **Exhibit A**.

N.   "**Annual Incentive Payment(s)**" means the quarterly Real Property Tax Rebate payments for the four calendar quarters in each of the three (3) full Calendar Years that follow the first Real Property Tax Rebate payment.

O.   "**Real Property Improvements**" are defined as improvements to the Property, which shall include the Project and any other buildings, structures or fixtures erected or affixed to land on the Property that are included in the definition of real property set forth in Section 1.04(2), Texas Tax Code as amended.

P.   "**Real Property Tax Rebate**" means the percentage of Real Property Taxes paid by the COMPANY and actually received by the CITY and paid to the COMPANY pursuant to Section V.A.1.

Q.   "**Real Property Taxes**" shall mean the ad valorem tax assessed on the Eligible Property or a portion thereof, as appropriate, appraised by the Travis Central Appraisal District.

R.   **Intentionally Omitted.**

S.   **Intentionally Omitted.**

T.   "**Threshold Documentation**" is defined as copies of the following documents required for payment of the Chapter 380 Grant for each completed building of the Facilities: (1) proof of compliance with Section IV.B.-D.; (2) proof of the issuance of a Building Core and Shell Certificate of Occupancy for each building of the Facilities demonstrating that the building core and shell was constructed and completed on the Property per Section IV.A.1; (3) proof of construction hard costs for the completed core and shell of the building; and (4) the Threshold 380 Grant Certification described in Section VI.A. The CITY may request

3

additional records to support the information shown in the Threshold Documentation or compliance with this Agreement.

U.   "**Threshold Grant Criteria**" is defined as the criteria the COMPANY is required to meet for payment of Chapter 380 Grants to be paid for each completed building of the Facilities, which are set forth in Section IV A. 1.

V.   **"Year 1"** is defined as the tax year following the date on which each building for the Facilities is constructed and completed on the Property, and a Certificate of Occupancy is issued for the shell and core of each such building.

## II.
## General Provisions

A.   The Eligible Property is not in an improvement project financed by tax increment bonds.

B.   The Eligible Property is not owned or leased by any member of the City Council or any member of the Planning and Zoning Commission of CITY.

C.   It is acknowledged and agreed by the Parties that the completion of the Project is consistent with the purposes of encouraging state and local economic development and to stimulate business and commercial activity within the City.

## III.
## Representations and Warranties

A.   The CITY hereby represents and warrants to the COMPANY that the CITY has full constitutional and lawful right, power, and authority, under current applicable law, to execute and deliver and perform the terms and obligations of this Agreement, and all of the foregoing have been or will be duly and validly authorized and approved by all necessary CITY proceedings, findings, and actions.  Accordingly, this Agreement constitutes the legal, valid, and binding obligation of the CITY, is enforceable in accordance with its terms and provisions, and does not require the consent of any other governmental authority.

B.   The COMPANY hereby represents and warrants to the CITY that the COMPANY has full constitutional and lawful right, power, and authority, under current applicable law, to execute and deliver and perform the terms and obligations of this Agreement, and all of the foregoing have been or will be duly and validly authorized and approved by the COMPANY'S governing body or authority by all actions necessary to bind the COMPANY to his Agreement.  Accordingly, this Agreement constitutes the legal, valid, and binding obligation of COMPANY, is enforceable in accordance with its terms and provisions, and does not require the consent of any other authority or entity. COMPANY represents and warrants that COMPANY is a registered business in the State of Texas.

## IV.
## Performance Criteria

A.   **Grant Criteria**.

4

1. **Threshold Grant Criteria.** The following events must occur for the COMPANY to receive the Chapter 380 Grant described in Article V:

   a. The COMPANY completes construction of a building of the Facilities and a Certificate of Occupancy is issued for such building. The Parties agree that COMPANY intends to construct the Facilities one building at a time and that the COMPANY shall be entitled to receive the Chapter 380 Grant on a pro rata basis of the square footage of the building upon the completion and issuance of a Certificate of Occupancy for the  constructed and completed core and shell of each building of the Facilities, and upon the schedule described in Article V. Completion of the first building of the Facilities is anticipated to occur on or before 18 months after CITY approval of a building permit for the first building of the Project. Completion of all four buildings comprising Phase 1 of the Facilities is anticipated to occur on or before July 2028 ("Phase 1").

   b. Additionally, the COMPANY, at its sole option, may elect to construct the two additional buildings comprising Phase 2 of the Facilities during the term of this Agreement. The Parties agree that in the event COMPANY elects to construct Phase 2 of the Facilities, COMPANY intends to construct Phase 2 one building at a time and that COMPANY shall be entitled to receive the Chapter 380 Grant on a pro rata basis of the square footage of the building upon the completion and issuance of a Certificate of Occupancy for each building of Phase 2 of the Facilities, and upon the schedule described in Article V. In the event the COMPANY determines to construct the two additional buildings comprising Phase 2 of the Facilities, completion of the two additional buildings comprising Phase 2 of the Facilities is anticipated to occur on or before February 2030. In the event the COMPANY determines not to construct the two additional buildings comprising Phase 2 of the Facilities, COMPANY shall provide written notice of its decision to the CITY. Phase 2 construction not completed by February 28, 2031, will not be eligible for Chapter 380 Grant ("Phase 2").

   c. The COMPANY is in compliance with Sections IV.B-D.

2. **Ongoing Grant Criteria**.  After the first Chapter 380 Grant payment made to the COMPANY following completion of a building, the COMPANY must comply with the following requirements for each year in which the COMPANY seeks a Chapter 380 Grant payment for such building:

   .
   a. The COMPANY is in compliance with Section IV.B-D.

3.**Square Footage and Construction Cost of Facilities by Building and Phase**. The Parties agree that the minimum square footages and construction costs for the Facilities shall be as follows:

| Building | Phase | Square Footage | Construction Cost |
|---|---|---|---|
| Building 3 | Phase 1 | 483,991 SF | $31,954,043 |
| Building 4 | Phase 1 | 190,663 SF | $14,218,906 |
| Building 5 | Phase 1 | 87,998 SF | $7,629,553 |
| Building 6 | Phase 1 | 131,998 SF | $10,520,896 |
| | SUB TOTAL: | 894,650 SF | $64,323,397 |
| Building 1 | Phase 2 | 285,768 SF | $20,673,597 |
| Building 2 | Phase 2 | 202,176 SF | $15,574,440 |
| | SUB TOTAL: | 487,944 SF | $36,248,036 |
| | GRAND TOTAL: | 1,382,594 SF | $100,571,433 |

Construction of Phase 2 of the Facilities shall be at the option of COMPANY, per Section IV.A.1.b.

B.      The Project shall conform to the applicable building codes, zoning ordinances, plans approved by the jurisdiction issuing permits for the Project, and all other applicable Federal and State Laws, ordinances, and regulations.

C.      The COMPANY shall not allow the ad valorem taxes or business personal property owed to CITY or the Manor Independent School District (hereinafter, the "District") on any real property or business personal property owned by COMPANY and located within the City of Manor or the District to become delinquent beyond the last day they can be paid without assessment of penalty.  Notwithstanding the foregoing the COMPANY may contest and appeal any and all taxes/ad valorem taxes associated with the Property and owed to the District or any other applicable governmental entity, and during such appeal/contest the COMPANY shall not be required to pay taxes/ad valorem taxes associated with the Property to the District or any other applicable governmental entity until such time as the contest/appeal is finally and fully resolved, and in such event the CITY shall not be required to pay the Chapter 380 Grant until the contest/appeal is finally and fully resolved.

D.      The COMPANY covenants and certifies that the COMPANY does not and will not knowingly and directly employ an undocumented worker as that term is defined by Section

6

2264.001(4) of the Texas Government Code. In accordance with Section 2264.052 of the Texas Government Code, if the COMPANY is convicted of a violation under 8 U.S.C. Section 1324a (f), the COMPANY shall repay to the CITY the full amount of Chapter 380 Grants made under Article V of this Agreement. Repayment shall be paid within 120 days after the date following an unappealable conviction of the COMPANY, provided, however, the COMPANY shall not be liable for a violation by a subsidiary, affiliate, or franchisee of the COMPANY or by a person with whom the COMPANY contracts including, but not limited to, all tenants and subcontractors.

**V.**
**Economic Development Grants**

A.  **Chapter 380 Grant Payments For Each Completed Building**.

1.  Subject to the terms of this Agreement, and COMPANY'S full and timely performance of, and compliance with, each of the applicable Grant Criteria set forth in Article IV, the CITY agrees to pay to COMPANY the following Chapter 380 Grant payments for each completed building, commencing in Year 1 for such building and continuing through year 13, provided that the Chapter 380 Grant will cease when the Maximum Grant Amount has been reached:

    - Years 1 - 3:
        - An amount equal to 100% of the Real Property Taxes received by the CITY on a quarterly basis.
    - Years 4-13:
        - An amount equal to 50% of the Real Property Taxes received by the CITY on an annual basis.

2. The CITY shall pay the Real Property Tax Rebate Amount annually and quarterly as provided in this Section V. To be eligible to receive the Chapter 380 Grant in the years following Year 1, the Ongoing Grant Criteria must be met each year. The COMPANY will not be paid the 380 Grant payment for those tax years in which the Ongoing Grant Criteria are not met.

3. COMPANY shall annually provide the CITY the Documentation described in Article VI. The CITY shall pay the Real Property Tax Rebate Amount annually upon the later to occur of: (i) forty-five (45) days following the date the Documentation is received by the CITY; or (ii) within forty-five (45) days following the date the Real Property Taxes are received by the CITY and the COMPANY has notified the CITY that the taxes have been paid; provided that the applicable Grant Criteria as set forth in Article IV have been met.

B.  **Payment of Chapter 380 Grant For Reimbursement of Wastewater Impact Fees.**

7

1.    Up to $345,288 of the Maximum Grant Amount shall be reimbursed by the City of Manor to the COMPANY within 60 days of submittal of written evidence of payment of actual wastewater impact fees received by the City of Manor for each building of the Facilities.

C.    **Payment of Chapter 380 Grants Subject to CITY'S Budget and Reconciliation Procedure.**

1.    As a statutory requirement, all payments of Chapter 380 Grants are subject to the CITY'S budget and reconciliation procedure.

D.    **Maintenance of Books and Records**.  The CITY shall maintain complete books and records showing ad valorem taxes received by the CITY from the Property, which books and records shall be deemed complete if kept in accordance with generally accepted accounting principles as applied to Texas municipalities.  Such books and records shall be available for examination by the duly authorized officers or agents of COMPANY during normal business hours upon request made not less than five (5) business days prior to the date of the examination.  The CITY shall maintain such books and records throughout the term of this Agreement and store the same for four (4) years thereafter.

## VI.
## Reports, Audits and Inspections

A.    **Annual Certification and Reports**.  The COMPANY shall certify in writing to the CITY that the COMPANY is in compliance with the terms of this Agreement, and shall provide the CITY with reports and records reasonably necessary to demonstrate fulfillment of the performance criteria set forth in Article IV as follows:

1.    **Certification**. COMPANY shall complete and certify a 380 Grant Certification in a form substantially similar to that set forth in **Exhibit B**, which shall include the COMPANY Threshold or Ongoing Documentation, as appropriate.  Such Documentation and Certification shall be submitted at the time the COMPANY pays its respective Real Property Taxes.

2.    **Additional Reports.**  The COMPANY shall furnish CITY any additional records and information reasonably requested to support the Grant Criteria and the reports required by this Agreement.  The COMPANY shall further furnish the CITY with copies of or access to additional information reasonably required to verify the information set forth in the Threshold or Ongoing Documentation.

B.    **Right to Audit Books and Records**.  CITY shall have the right to audit the books and records of the COMPANY related to the Eligible Property.  CITY shall notify the COMPANY in advance in writing of their intent to audit in order to allow the COMPANY,

8

as applicable, adequate time to make such books and records available (in no event shall the COMPANY, as applicable, have less than five (5) business in order to make such books and records available).

C. **Inspection**.  At all times throughout the term of this Agreement, CITY shall have reasonable access to the Property upon providing at least 48 hours' written notice to the COMPANY for the purpose of inspecting the Property to ensure that the Facilities are designed, constructed and installed in accordance with the terms of this Agreement. Notwithstanding the foregoing, the CITY'S inspection of the Property shall not interfere with the operation of the Property.

## VII.
## Breach

A. **Breach**.  A breach of this Agreement may result in termination or modification of this Agreement as provided herein.  The following conditions shall constitute a breach of this Agreement:

    1. The COMPANY fails to meet the performance criteria as specified in Article IV above for a period of two consecutive grant years.

    2. The COMPANY falsely certifies that the performance criteria in the Threshold Documentation submitted to the CITY under Article VI has been met.

    3. CITY fails to timely make payments to the COMPANY under the terms of this Agreement.

B. **Notice of Breach**.   Notwithstanding anything herein to the contrary, no Party shall be deemed to be in default under this Agreement until the passage of sixty (60) business days after receipt by such Party of notice of default from the other Party ("Cure Period"), which notice shall specify, in reasonable detail, the nature of the default.  Upon the passage of the Cure Period without cure of the default, such Party shall be deemed to have defaulted for purposes of this Agreement; provided that, if the nature of the default is such that it cannot reasonably be cured within the Cure Period, the Party receiving the notice of default may during such Cure Period give the other Party written notice that it has commenced cure within the Cure Period and will diligently and continuously pursue a cure to completion as soon as reasonably possible, and such written notice together with diligent and continuous pursuit of the cure shall extend the Cure Period for up to an additional ninety (90) calendar days so long as the cure is being diligently and continuously pursued during such time; and provided further that, if the cure cannot be reasonably accomplished within the additional ninety (90) calendar day period but the applicable facts, circumstances, and progress establish that a cure will be obtained within a reasonable period of time following the expiration of the ninety (90) calendar day period, the time for cure will be extended for an additional period of time as mutually agreed by the Parties in writing (such agreement not to be unreasonably withheld). If a default is not cured within the applicable Cure Period, or any extension of the cure period described herein, then the non-defaulting Party may terminate this Agreement, pursue the remedies set forth in this Agreement, as well as any other remedies available in equity or law.

C.    **Repayment of Chapter 380 Grants.**

In the event that the COMPANY commits a breach of this Agreement according to Section VII.A.2, the COMPANY shall pay back to the CITY the Chapter 380 Grant for the tax year for which false certification was submitted within thirty (30) days of written demand by the CITY. There shall be no repayment obligation for any certification later determined to be substantively incorrect if COMPANY relies in good faith on information received from third parties, including tenants and subtenants, as long as COMPANY uses proper and reasonable due diligence and professional methods in collecting such information.

D.    **Tax Lien Not Impaired.**  It is expressly agreed and acknowledged between the parties to this Agreement that nothing in this Agreement shall be deemed or construed to affect the lien for taxes against the property established by Section 32.01 of the Texas Tax Code. Such lien shall secure the payment of all taxes, penalties and interest ultimately imposed on the Property.  Any such lien may be fully enforced pursuant to the provisions of the Code.  For purposes of this Subsection, "property" refers to the Premises and Eligible Property described herein.

E.    **Limitations on Liability.** The CITY shall not be liable for consequential damages, specifically lost profits, and any damages claimed against the CITY shall be limited to amounts recoverable under §271.153 of the Texas Local Government Code. The parties agree that this Agreement shall not be interpreted as or otherwise claimed to be a waiver of sovereignty or governmental immunity on the part of the CITY.

F.    **Personal Liability of Public Officials; No Debt Created.**  No employee of the CITY, nor any councilmember or agent of the CITY, shall be personally responsible for any liability arising under or growing out of this Agreement.  The Chapter 380 Grant made hereunder shall be paid solely from lawfully available funds that have been appropriated by the CITY. Under no circumstances shall the CITY'S obligations hereunder be deemed to create any debt within the meaning of any constitutional or statutory provision.

**VIII.**

**Indemnification**

**COMPANY COVENANTS AND AGREES TO FULLY INDEMNIFY AND HOLD HARMLESS, THE CITY AND ITS ELECTED OFFICIALS, EMPLOYEES, OFFICERS, DIRECTORS, AND REPRESENTATIVES, INDIVIDUALLY AND COLLECTIVELY, FROM AND AGAINST ANY AND ALL COSTS, CLAIMS, LIENS, DAMAGES, LOSSES, EXPENSES, FEES, FINES, PENALTIES, PROCEEDINGS, ACTIONS, DEMANDS, CAUSES OF ACTION, LIABILITY AND SUITS OF ANY KIND AND NATURE BROUGHT BY ANY THIRD PARTY AND RELATING TO COMPANY'S ACTIONS UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO, PERSONAL INJURY OR DEATH AND PROPERTY DAMAGE, MADE UPON THE CITY OR  DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM OR RELATED TO COMPANY OR COMPANY'S AFFILIATE'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR CRIMINAL CONDUCT IN ITS ACTIVITIES UNDER THIS AGREEMENT, INCLUDING ANY SUCH ACTS OR OMISSIONS OF COMPANY OR COMPANY'S AFFILIATE, ANY AGENT, OFFICER, DIRECTOR, REPRESENTATIVE,**

10

EMPLOYEE, CONSULTANT OR SUBCONSULTANTS OF COMPANY OR COMPANY'S AFFILIATE, AND THEIR RESPECTIVE OFFICERS, AGENTS, EMPLOYEES, DIRECTORS AND REPRESENTATIVES WHILE IN THE EXERCISE OR PERFORMANCE OF THE RIGHTS OR DUTIES UNDER THIS AGREEMENT, ALL WITHOUT, HOWEVER, WAIVING ANY GOVERNMENTAL IMMUNITY AVAILABLE TO CITY, UNDER TEXAS LAW AND WITHOUT WAIVING ANY DEFENSES OF THE PARTIES UNDER TEXAS LAW. THE PROVISIONS OF THIS INDEMNIFICATION ARE SOLELY FOR THE BENEFIT OF THE CITY AND ARE NOT INTENDED TO CREATE OR GRANT ANY RIGHTS, CONTRACTUAL OR OTHERWISE, TO ANY OTHER PERSON OR ENTITY. COMPANY SHALL PROMPTLY ADVISE CITY IN WRITING OF ANY CLAIM OR DEMAND AGAINST THE CITY, RELATED TO OR ARISING OUT OF COMPANY OR COMPANY'S TENANTS' ACTIVITIES UNDER THIS AGREEMENT AND SHALL SEE TO THE INVESTIGATION AND DEFENSE OF SUCH CLAIM OR DEMAND AT COMPANY'S COST TO THE EXTENT REQUIRED UNDER THE INDEMNITY IN THIS PARAGRAPH. CITY SHALL HAVE THE RIGHT, AT ITS OPTION AND AT ITS OWN EXPENSE, TO PARTICIPATE IN SUCH DEFENSE WITHOUT RELIEVING COMPANY OF ANY OF ITS OBLIGATIONS UNDER THIS PARAGRAPH.

IT IS THE EXPRESS INTENT OF THE PARTIES TO THIS AGREEMENT THAT THE INDEMNITY PROVIDED FOR IN THIS PARAGRAPH, SHALL NOT BE AN INDEMNITY EXTENDED BY COMPANY TO INDEMNIFY, PROTECT AND HOLD HARMLESS CITY FROM THE CONSEQUENCES OF THE CITY'S OWN NEGLIGENCE OR INTENTIONAL MISCONDUCT. THE INDEMNITY PROVIDED FOR IN THIS PARAGRAPH SHALL APPLY ONLY, TO THE EXTENT OF ANY COMPARATIVE NEGLIGENCE STATUTES AND FINDINGS, WHEN THE NEGLIGENT ACT OF CITY IS A CONTRIBUTORY CAUSE OF THE RESULTANT INJURY, DEATH, OR DAMAGE, AND IT SHALL HAVE NO APPLICATION WHEN THE NEGLIGENT ACT OF CITY IS THE SOLE CAUSE OF THE RESULTANT INJURY, DEATH, OR DAMAGE. COMPANY FURTHER AGREES TO DEFEND, AT ITS OWN EXPENSE AND ON BEHALF OF CITY AND IN THE NAME OF CITY ANY CLAIM OR LITIGATION BROUGHT AGAINST CITY (AND ITS ELECTED OFFICIALS, EMPLOYEES, OFFICERS, DIRECTORS AND REPRESENTATIVES), IN CONNECTION WITH ANY SUCH INJURY, DEATH, OR DAMAGE FOR WHICH THIS INDEMNITY SHALL APPLY, AS SET FORTH ABOVE.

IT IS THE EXPRESS INTENT OF THIS SECTION THAT THE INDEMNITY PROVIDED TO THE CITY AND THE COMPANY SHALL SURVIVE THE TERMINATION AND OR EXPIRATION OF THIS AGREEMENT AND SHALL BE BROADLY INTERPRETED AT ALL TIMES TO PROVIDE THE MAXIMUM INDEMNIFICATION OF THE CITY AND / OR THEIR OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES AND ELECTED OFFICIALS PERMITTED BY LAW.

## IX.
## Notice

All notices called for or required by this Agreement shall be addressed to the following, or such other party or address as either party designates in writing, by certified mail postage prepaid or by hand delivery:

**COMPANY**:                DG Manor Downs Property Owner LP
                            Attn: Tim Kraftson
                            Development Manager-Central Region
                            Dalfen Industrial

17304 Preston Road, Suite 550
Dallas, Texas 75252


**With a copy to**: DG Manor Downs Property Owner LP
Attn: Joseph Walker
General Counsel and Chief Compliance Officer
Dalfen Industrial
17304 Preston Road, Ste. 550
Dallas, Texas 75252


**CITY**: City of Manor
Attn:  Economic Development Director
105 E. Eggleston Street
Manor, TX  78653
sjones@manortx.gov

**With a copy to**: The Knight Law Firm
Attn: Veronica Rivera
223 E. Anderson Ln.
Austin, TX 78752


## X.
## City Council Authorization

This Agreement was authorized by motion and vote of the City Council recorded in the minutes authorizing the City Manager or his designee to execute this Agreement on behalf of the CITY.

## XI.
## Severability

In the event any section, subsection, paragraph, sentence, phrase or word is held invalid, illegal or unconstitutional, the balance of this Agreement shall stand, shall be enforceable and shall be read as if the parties intended at all times to delete said invalid section, subsection, paragraph, sentence, phrase or word.

## XII.
## Estoppel Certificate

Any party hereto may request an estoppel certificate from another party hereto, so long as the certificate is requested in connection with a bona fide business purpose.  The certificate, which if requested will be addressed to a subsequent purchaser or assignee of COMPANY, shall include, but not necessarily be limited to statements that this Agreement is in full force and effect without

12

default (or if default exists the nature of same), the remaining term of this Agreement, the levels and remaining term of the eligible grants and such other matters reasonably requested by the party(ies) to receive the certificates.

## XIII.
## Standing

COMPANY, as a party to this Agreement, shall be deemed a proper and necessary party in any litigation questioning or challenging the validity of this Agreement or any of the underlying ordinances, resolutions or City Council actions authorizing same, and COMPANY shall be entitled to intervene in said litigation.

## XIV.
## Applicable Law

This Agreement shall be construed under the laws of the State of Texas without regarding to its conflict of laws provisions. Venue for any action under this Agreement shall be the State's District Court of Travis County, Texas. This Agreement is performable in Travis County, Texas.

## XV.
## Force Majeure

It is expressly understood and agreed by the parties to this Agreement that the parties shall not be found in default of this Agreement if any party's failure to meet the requirements of this Agreement is delayed by reason of war, Act of God, fire, pandemic, material or labor shortage, strike, civil unrest, governmental action, or any other reason beyond the reasonably control of the respective party, or other casualty or event of a similar nature.

## XVI.
## No Other Agreement

This Agreement embodies all of the agreements of the parties relating to its subject matter as specifically set out herein, supersedes all prior understandings and agreements regarding such subject matter, and may be amended, modified or supplemented only by an instrument or instruments in writing executed by the parties.

## XVII.
## Headings

The headings of this Agreement are for the convenience of reference only and shall not affect in any manner any of the terms and conditions hereof.

## XVIII.
## Successors and Assigns; Independent Contractor Status

The Parties to this Agreement each bind themselves and their successors, executors, administrators and assigns to the other Party of this Agreement and to the successors, executors, administrators and assigns of such other Party in respect to all covenants of this Agreement. No

13

successor, executor, administrator or assign is valid in the place of the Parties to this Agreement without the written consent of CITY and such consent shall not be unreasonably withheld.

COMPANY shall be fully responsible for its employees, including meeting all state and federal requirements for minimum wage, income tax withholding, workers' compensation, insurance, and all city, state, and federal requirements governing employer/employee relations. COMPANY hereby certifies that it shall be and is in compliance with all such regulations, laws and requirements. This Agreement does not create a partnership nor employment relationship with the City.

## XIX.
## Counterparts

This Agreement may be executed in any number of counterparts, each of which may be executed by any one or more of the parties hereto, but all of which shall constitute one instrument, and shall be binding and effective when all of the parties hereto have executed at least one counterpart.

## XX.
## No Third-Party Beneficiaries

For purposes of this Agreement, including its intended operation and effect, the Parties specifically agree that: (1) the Agreement only affects matters/disputes between the Parties to this Agreement, and is in no way intended by the Parties to benefit or otherwise affect any third person or entity, notwithstanding the fact that such third person or entities may be in a contractual relationship with CITY or the COMPANY; and (2) the terms of this Agreement are not intended to release, either by contract or operation of law, any third person or entity from obligations owing by them to either CITY or the COMPANY.

## XXI.
## Remedies

Except as provided in this Agreement, no right or remedy granted herein or reserved to the Parties is exclusive of any right or remedy herein by law or equity provided or permitted; but each shall be cumulative of every right or remedy given hereunder. No covenant or condition of this Agreement may be waived without consent of the Parties. Forbearance or indulgence by either Party shall not constitute a waiver of any covenant or condition to be performed pursuant to this agreement.

## XXII.
## Term and Termination

A. **Term.**

Unless terminated earlier as provided herein, this Agreement shall terminate upon the earliest occurrence of any one or more of the following: (1) the written agreement of the Parties; or (2) The Agreement's Expiration Date. The Expiration Date shall be the date that the Maximum Grant Amount is paid to COMPANY; provided that the following shall survive termination of this

Agreement for any reason: Article III; Article V; Article VI.B; Article VII; Article VIII; Article XIII, Article XIV, Article XV, Article XVI, Article XVIII, Article XX, and Article XXI.

B. **Termination.**

During the term of this Agreement, should the COMPANY commit a breach of this Agreement according to the Sections VII.A.1. or 2., the CITY may terminate this Agreement, subject to Section VII.B. In addition, the CITY may terminate the Agreement in the event that the COMPANY fails to obtain a Certificate of Occupancy for each building of Phase I by July 31, 2028 and by February 28, 2031, for Phase II, if applicable.

## XXVII.
## Statutory Verifications

A.  In accordance with Chapter 2270, Texas Government Code, the CITY may not enter into a contract with a COMPANY for goods and services unless the contract contains a written verification from the COMPANY that it: (a) does not boycott Israel; and (2) will not boycott Israel during the term of the contract. The signatory executing this contract on behalf of the COMPANY verifies that the COMPANY does not boycott Israel and will not boycott Israel during the term of this Agreement.

B.  To the extent the Agreement constitutes a contract for goods or services within the meaning of Section 2274 of the Texas Government Code, as amended, solely for purposes of compliance with therewith, and subject to applicable Federal law, the COMPANY represents that the COMPANY does not, and will not for the duration of this agreement, have a practice, policy, guidance, or directive that discriminates against a firearm entity or firearm trade association. Further, the COMPANY represents that the COMPANY does not, and will not for the duration of this agreement, have a practice, policy, guidance, or directive that discriminates against a firearm entity or firearm trade association. The phrase "Discriminates Against a Firearm Entity or Firearm Trade Association" as used in this paragraph have the meanings assigned to the phrase "Discriminate Against a Firearm Entity or Firearm Trade Association" in Section 2274.001(3) of the Texas Government Code, as amended.

C.  To the extent the Agreement constitutes a contract for goods or services within the meaning of Section 2274 of the Texas Government Code, as amended, solely for purposes of compliance with therewith, and subject to applicable Federal law, the COMPANY represents that the COMPANY does not (i) boycott energy companies and (ii) will not boycott energy companies through the term of this Agreement. The phrase "Boycott Energy Companies" as used in this paragraph have the meanings assigned to the phrase "Boycott Energy Company" in Section 809.001 of the Texas Government Code, as amended.

D.  To the extent this Agreement constitute a governmental contract within the meaning of Section 2252.151 of the Texas Government Code, as amended, solely for purposes of compliance with Chapter 2252 of the Texas Government Code, and except to the extent otherwise required by applicable federal law, COMPANY represents that COMPANY nor

any wholly owned subsidiary, majority-owned subsidiary, parent COMPANY or affiliate of COMPANY is a COMPANY listed by the Texas Comptroller of Public Accounts under Sections 2270.0201, or 2252.153 of the Texas Government Code. Further, COMPANY represents that COMPANY nor any wholly owned subsidiary, majority-owned subsidiary, parent COMPANY or affiliate of COMPANY is a COMPANY listed by the Texas Comptroller of Public Accounts under Sections 2270.0201, or 2252.153 of the Texas Government Code.

E.    Form 1295. Texas law and the City requires that business entities, as defined in Texas Government Code, Section 2252.908, who contract with the City complete the on-line of Form 1295 "Certificate of Interested Parties" as promulgated by the Texas Ethics Commission (https://www.ethics.state.tx.us/filinginfo/1295/). Form 1295 is also required for any and all contract amendments, extensions or renewals. Prior to any payment to Contractor hereunder, Contractor shall provide proof of submission to the City Secretary that the appropriate Form 1295 documentation has been submitted.

## XXVIII.
## Effective Date

This Agreement shall be effective on the _____ day of _____, 2025 (the "Effective Date").

**IN WITNESS WHEREOF**, the parties hereto have executed this agreement on the day and year written above.

DG MANOR DOWNS PROPERTY OWNER, L.P.,
a Delaware limited partnership


By: _____
Name: _____
Title: _____


**THE STATE OF TEXAS**            §

**COUNTY OF** _____      §

This instrument was acknowledged before me on this _____ day of _____, 2025, by _____, _____ of DG Manor Downs Property Owner, L.P., a Delaware limited partnership, on behalf of said partnership.

_____

16

(SEAL)

Notary Public, State of _____

**CITY OF MANOR, TEXAS**

By: _____

_____
CITY MANAGER
Date:_____

**ATTEST**:

_____

_____
CITY SECRETARY

**APPROVED AS TO FORM:**

By: _____

_____
CITY ATTORNEY

Date:_____

THE STATE OF TEXAS      §
                                     §      **CITY OF MANOR, TEXAS**

**COUNTY OF TRAVIS**      §

## Acknowledgment

**BEFORE ME**, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed same for and as the act and deed of the **CITY OF MANOR**, **TEXAS**, a municipal corporation of Travis and Travis Counties, Texas, and as the _____ thereof, and for the purposes and consideration therein expressed, and in the capacity therein expressed.

17

**GIVEN UNDER MY HAND AND SEAL OF OFFICE** on this the _____ day of March, 2023.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

_____
MY COMMISSION EXPIRES:

_____
NOTARY'S PRINTED NAME

# EXHIBIT A

## The Property

**EXHIBIT B**

**CITY OF MANOR**
**CHAPTER 380 AGREEMENT (THE "AGREEMENT") GRANT REPORT FORM**

**Chapter 380 Grant  Certification**

<u>**PROJECT STATUS**</u> **– THRESHOLD GRANT CRITERIA (provide in Year 1 only for each completed building)**

Certificate of Occupancy for Building ___ of the Facilities issued on _____._____. Square footage for Building ___ of the Facilities is_____.

**Please provide each of the following documents as an attachment to this Certification:**

☐ Proof of payment of the ad valorem taxes.

☐. Proof of compliance with Threshold Grant Criteria, i.e., affidavit of compliance.

**For Years Subsequent to Year 1 for each completed building, provide**

1. Proof of payment of ad valorem taxes;

2. Proof of Compliance with Ongoing Grant Criteria (Sections IV B.-D. of Agreement), i.e. affidavit of compliance.

**CERTIFICATION**

I certify that to the best of my knowledge and belief, the information and attached documents provided in this Chapter 380 Grant Certification are true and accurate and in compliance with the terms of the Chapter 380 Agreement with the City of Manor.  I further certify that to the best of my knowledge and belief, I have met the requirements of the Threshold Grant Criteria, as that term is defined in the Agreement.

_____    _____
Printed Name and Title of Certifying Officer    Signature of Certifying Officer

_____    _____    _____
Date    Telephone Number    Email Address

NOTE:  This Chapter 380 Grant Certification shall be filed with the City for each completed building of the Facilities prior to the payment of the Chapter 380 Grant for such completed building.

Good afternoon,

Adding Mr. Battaile. We do still need this hearing. The motions to be presented tomorrow are non-evidentiary.

Regards,

**Ian T. Todd**
Sneed, Vine & Perry,
A Professional Corporation
itodd@sneedvine.com
(512) 930-9775



**From:** Batool Fatima <Batool.Fatima@traviscountytx.gov>
**Sent:** Tuesday, July 15, 2025 4:38 PM
**To:** Ian Todd <itodd@sneedvine.com>; robert@manor.tx.us; Jessica Newlin <jnewlin@sneedvine.com>; Anna Puff <apuff@sneedvine.com>
**Cc:** Elliott Beck <Elliott.Beck2@traviscountytx.gov>
**Subject:** Hearing 7/16; D-1-GN-25-000719 – BATTAILE vs. ALMARAZ et al.

Counsel:

Your upcoming **in-person hearing** has been assigned to the 345th District Court for **Wednesday, July 16th, at 9:00 a.m.** **Your hearing will take place at the new Travis County Civil and Family Courts Facility at 1700 Guadalupe in courtroom 10C.** The Court may be assigned multiple hearings on that day and time, and if so, the Judge will hold a brief docket call before we get started.

Please confirm that all necessary parties are included in this email and, if not, please 'Reply All' and add any missing counsel of record or self-

represented parties as recipients.

Attached to this email are this Court's current **Expectations and Preferences** and **Guidance on Submission of Electronic Exhibits**. These include practice tips for the 345th and instructions on how to upload your exhibits and other materials to Box.

Please note that each counsel of record and self-represented party listed on the announcement form is receiving this email, which gives each of you access to the Box folder to upload and review documents for this case. **It is extremely important that you follow the instructions on how to upload your exhibits properly.**

For additional permissions to BOX exhibit folders, please review and add all parties, attorneys, and paralegals who will be working on the case or will need access to electronic exhibits in the Announcement Application: Home - Announcements [cts-ext-web2]
For Technical Assistance with BOX, please contact Courts-Help (courts-help@traviscountytx.gov) at 512-854-8324.

**If your time announcement changes or you no longer need this hearing, please let me know as soon as possible.**

If your hearing is not an evidentiary hearing (i.e., one at which no sworn testimony will be presented), a court reporter is generally not present. If you have a specific reason why you are requesting a record on a non-evidentiary hearing, please let me know and the judge will evaluate your request.

**Interpretation:** If either party has an interpreter, please let me know their name and email address as soon as possible. If any party needs an interpreter, please contact the Court Administrator's Office at (512) 854-2484 and they will arrange one for you.

*If you have filed anything within the last week, please be sure to upload these documents to the "other materials" folder as the clerk's office is sometimes behind in uploading filings to the Court's electronic file.*
Best,

# Batool Fatima

Judicial Executive Assistant
345th Judicial District Court - The Honorable Jan Soifer
P.O. Box 1748
Austin, Texas 78767
(512) 854-9712

This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use, dissemination, distribution, copying, disclosure or any other action taken in relation to the content of this email including any attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and permanently delete the original and any copy of this email, including secure destruction of any printouts.

Respectfully submitted,

**SNEED, VINE & PERRY, P.C.**
200 W. 6th Street, Suite 110
Georgetown, Texas 78626
512-930-9775 (Telephone)
512-819-9707 (Telecopier)

By: _____
    Ian T. Todd
    Texas Bar No. 24104274
    Email: itodd@sneedvine.com
    Anna Puff
    State Bar No. 24144206
    Email: apuff@sneedvine.com
    **EMAIL FOR FILINGS AND DISCOVERY ONLY:**
    gtwnfilings@sneedvine.com
    ATTORNEYS FOR DEFENDANT
    MC RETAIL GP, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document has been served by the method indicated as set out below on this 26th day of June, 2025.

*Via E-service: robert@manor.tx.us*
Robert Edward Battaile
502 E. Eggleston St. Unit A
Manor, Texas 78653

_____
Ian T. Todd

EXHIBIT B - D-1-GN-25-000719



CAUSE NO. C-1-CR- 24501881

| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| VS. | § | AT LAW NUMBER 8 |
| Robert Battaile | § | TRAVIS COUNTY, TEXAS |

## MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the State of Texas by and through her Attorney, and respectfully requests the Court to dismiss the above-entitled and numbered criminal action in which the defendant is charged with the offense of _____Harassment_____, for the reason:

☑ The evidence is insufficient - cannot prove beyond reasonable doubt:
Caselaw (owens v. State) - content doesn't meet statutory requirements
_____;

☐ The defendant entered a plea of in another case: _____;
☐ The complaining witness has requested a dismissal;
☐ The complaining witness is unavailable for trial;
☐ The case has been refiled: _____;
☐ The defendant is deceased;
☐ The defendant has been granted immunity in light of his testimony;
☐ Restitution made;
☐ Conditional Dismissal: _____
_____;

OR
☐ Other basis, and for cause would show the Court the following:
_____
_____.

WHEREFORE, the State prays that the above-entitled and number cause be dismissed.

Respectfully submitted,

_____
Assistant County Attorney
SBN: 24085956
9/8/25
Date

## ORDER         9.8.25

The foregoing motion having been presented to me on _____, and the same having been considered, it is, therefore **ORDERED, ADJUDGED, AND DECREED** that said above-entitled and numbered cause is hereby dismissed.

_____
Judge of the County Court at Law No. 8
of Travis County, Texas

COUNTY CLERK-WHITE: DEFENDANT'S COPY-YELLOW: STATE'S COPY-PINK: SHERIFF'S COPY-GOLDENROD

CAUSE NO. C-1-CR- 24501880

| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| VS. | § | AT LAW NUMBER 8 |
| Robert Battaile | § | TRAVIS COUNTY, TEXAS |

## MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the State of Texas by and through her Attorney, and respectfully requests the Court to dismiss the above-entitled and numbered criminal action in which the defendant is charged with the offense of _____ Harassment _____, for the reason:

☒ The evidence is insufficient - cannot prove beyond reasonable doubt:
Caselaw (owens v. State) - content doesn't meet statutory requirements
_____;

☐ The defendant entered a plea of in another case: _____;
☐ The complaining witness has requested a dismissal;
☐ The complaining witness is unavailable for trial;
☐ The case has been refiled: _____;
☐ The defendant is deceased;
☐ The defendant has been granted immunity in light of his testimony;
☐ Restitution made;
☐ Conditional Dismissal: _____
_____;

OR

☐ Other basis, and for cause would show the Court the following:
_____
_____

WHEREFORE, the State prays that the above-entitled and number cause be dismissed.

Respectfully submitted,

_____
Assistant County Attorney
SBN: 24085956
9/8/25
Date

## ORDER

9.8.25

The foregoing motion having been presented to me on _____ 9.8.25 _____, and the same having been considered, it is, therefore **ORDERED, ADJUDGED, AND DECREED** that said above-entitled and numbered cause is hereby dismissed.

_____
Judge of the County Court at Law No. 8
of Travis County, Texas

COUNTY CLERK-WHITE: DEFENDANT'S COPY-YELLOW: STATE'S COPY-PINK: SHERIFF'S COPY-GOLDENROD

# ORDER OF COMMITMENT
## TO THE SHERIFF OF TRAVIS COUNTY. GREETINGS:

ROBERT EDWARD BATTAILE  who having been brought before me 5/28/2025 at __4:05__ __A__ M. charged with the offense:

- 3rd Felony STALKING

is COMMITTED to the CUSTODY of the SHERIFF of Travis County, Texas, to be detained unless he complies with the conditions of bond set on this date or any amendment or modification thereof.

Filed In The District Court
of Travis County, Texas
on __5/29/2025__
at __8:00 AM. Er__
Velva L. Price, District Clerk

1. Defendant is ordered to appear in:

   Court Administration Office, Room 1.218
   BLACKWELL-THURMAN CRIMINAL JUSTICE CENTER, 509 W. 11th Street
   Instanter

2. If defendant is in custody on the above date, the SHERIFF is hereby ordered to present said defendant in the above Court on said appearance date and at all times said charge(s) or accusation(s) are called before said Court

3. Bail is hereby set as follows: _50,000 + Do Not Contact Chief Phipps or Any Manor PD Employees with any Threatening, Derogatory, demeaning, Harassing Communications. Any Contact with Manor PD Employees is limited to 911 emergency Matters + MH Supervision + No poss Firearms_

4. The magistrate informed the person of the person's right to request appointment of counsel; asked the person whether the person wants to request appointment of counsel; and the person (requested) (did not request) appointment of counsel.

5. Defendant____is/__✓__is not ordered to install a vehicle ignition interlock within 30 days of release on bond. Defendant is not to operate any motor vehicle unless the vehicle is equipped with that device. Report to the Interlock office within 3 working days of release (for location call 512-854-9381).

6. Bond is acceptable if in compliance with Articles 17.03, 17.031, 17.04, and/or 17.08 of the Texas Code of Criminal Procedure.

The undersigned hereby certifies that the defendant has been warned of his rights under Art. 15.17 of the Texas Code of Criminal Procedure.

HEREIN FAIL NOT but of this ORDER make due return showing how you have executed same.

Judge Brian M. Guerra
Austin Municipal Court

| Attorney | Judge of the ( Municipal / JP / _____ |
|---|---|
| Retained_____ Appointed_____ | Court of ( City of Austin / Travis County / |
| | _____ ), Texas  (Acting as Magistrate) |

Warrant: D1DC25500292     TRN: 9239081186     TRS: A001     Cause No.: D1DC25500292
The State of Texas vs.
Name:   ROBERT EDWARD BATTAILE
Address: 502 EGGLESTON
City:   MANOR     TX     78653
DOB:   8/14/1950   Sex: M   Race: W   Ethnic: N   MNI: 2418479   Booking #: 2513341   Charge No.: 1

**SHERIFF'S RETURN**
CAME TO HAND THIS _____ day of __MAY 28 2025__, 20____, at __450__ o'clock __A__. M.

and executed this _____ day of __MAY 28 2025__, 20____, at __450__ o'clock __A__. M.
by placing the accused in jail in Travis County, Texas.

Sally Hernandez
_____
SHERIFF OF TRAVIS COUNTY, TEXAS

COURTROOM_____/VIRTUAL__✓__

J. STRICKLAND3885
by Deputy

Docusign Envelope ID: 81EF3F9C-3077-4C6E-9324-2EEC7CDBEC7C



# OFFICE OF THE
# DISTRICT ATTORNEY

**P.O. Box 1748, Austin, TX 78767**

**JOSÉ P. GARZA**
**DISTRICT ATTORNEY**

Telephone 512/854-9400
Telefax 512/854-4206

**TRUDY STRASSBURGER**
**FIRST ASSISTANT**

TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE

REJECTION OF CHARGES IN D1DC25500292

CUSTODY STATUS: On Bond

The District Attorney's Office has reviewed the evidence in the case listed below and determined that no felony charges will be filed at this time.  For the reason: Insufficient Evidence (Include note)

Additional Information:

Cause # D1DC25500292        MNI: 2418479        Court: 427th

TRN: 9239081186        TRS: A001        DPS: 13160014

ROBERT BATTAILE        DOB: 8/14/1950    SEX: Male        RACE: White

Filing Agency: TX2270200  MANOR PD

Charge: STALKING - PC 42.072(b) - F3

Authorized By: _____
DocuSigned by:
*Bernard Ammerman*
B849C4280D7C43D...
BERNARD AMMERMAN

Date: 8/19/2025

Ronald Earle Building, 416 West 11th Street, Austin, Texas 78701

**RICO**

# City of Manor Closed Request # 441 [3631383531376666]

**City of Manor** <manorcitytx@user.govoutreach.com>

8:14 AM

**To** robert@manortx.us

Reply    Reply all    Forward    Delete    ≡

---If replying by email, enter your reply above this line---

Dear Robert,

Your request # 441 has been resolved with the resolution:
This was City of Manor work that was being done.

*ON A PRIVATE DEVELOPERS LOT*

This is in reference to the Problem on Municipal code you submitted on 11/12/2024  11:50 AM
Location: Manor City Cemetery
Description: 1) City of Manor is desecrating our 1906 Martin McVey cemetery and irreparably harming the 1871 MANOR CEMETERY. That's against the law; and
2) City of Manor is clearing a private developer's property using city staff, equipment and funds. That is also against the law.

I filed a Police Report a year that's been thrown in the trash by our Manor PD. This is now the THIRD DESECRATION THAT CHIEF RYAN has allowed.

We are committed to providing you the best service we can.  We would
appreciate you filling out an online survey on how this request was
handled.  You can fill out the online survey by going to:
<http://user.GovOutreach.com/manorcitytx/survey.php?cid=8608508&access=3631383531376666>

You may reply to this email to send a response or you can view this
request online at:
<http://user.GovOutreach.com/manorcitytx/case.php?id=8608508&access=3631383531376666>

Mail: No subject  ☐

September 2, 2025

*Via email:* robert@manortx.us
*Robert Battaile*
*502 E Eggleston St Unit B*
*Manor, Texas 78653*

Dear Mr. Bataille:
The City of Manor has received your request for information related to Parcel 238889 at the corner of Parsons and Lexington dated August 18, 2025. We have determined that complying with your request will result in the imposition of a charge that exceeds $40. Therefore, we are providing you with this cost estimate as required by section 552.2615 of the Texas Government Code.

| Itemized List of Charges | Quantity x Price | Total |
|---|---|---|
| Standard Copies | 844 x $0.10 | $84.40 |
| Jump Drive | 1 x $10.00 | $10.00 |
| Labor Minutes ($15/hour) | 660 minutes x $0.25 | $165.00 |
| Overhead charges 20% of $165.00 | | $33.00 |
| | | Total $292.40 |

The estimated charges exceed $100.00; therefore, as allowed by section 552.263(a) of the Government Code, we require a deposit of ($292.40) before starting work on your request.

There is not an alternative less costly method of viewing the records available.

Your request will be considered automatically withdrawn if you do not notify us in writing within ten business days from the date of this letter that you either:

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 106610284
Filing Code Description: Original Proceeding Petition - Exempt
Filing Description: PETITION FOR WRIT OF MANDAMUS for 15th Court of Appeals
Status as of 10/8/2025 3:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jeffrey Hobbs | 24012837 | jhobbs@abaustin.com | 10/8/2025 3:01:03 PM | SENT |
| Michael Kabat | 24050847 | mkabat@mcginnislaw.com | 10/8/2025 3:01:03 PM | SENT |
| Joanna Salinas | 791122 | joanna.salinas@fletcherfarley.com | 10/8/2025 3:01:03 PM | SENT |
| William Davidson | 5447000 | bdavidson@chmc-law.com | 10/8/2025 3:01:03 PM | SENT |
| Gavin Villareal | 24008211 | gavin.villareal@bakerbotts.com | 10/8/2025 3:01:03 PM | SENT |
| Michael Roberts | 24082153 | mroberts@jw.com | 10/8/2025 3:01:03 PM | SENT |
| Cynthia Veidt | 24028092 | cynthia.veidt@traviscountytx.gov | 10/8/2025 3:01:03 PM | SENT |
| Stephanie Serrano | 24092655 | sserrano@rothberg.law | 10/8/2025 3:01:03 PM | SENT |
| Kevin O'Hanlon | 15235500 | kohanlon@808west.com | 10/8/2025 3:01:03 PM | SENT |
| Patrick Kelly | 11228000 | pat.kelly@traviscountytx.gov | 10/8/2025 3:01:03 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 10/8/2025 3:01:03 PM | SENT |
| Austin Jones | 24116579 | ajones@mcginnislaw.com | 10/8/2025 3:01:03 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 10/8/2025 3:01:03 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 10/8/2025 3:01:03 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 10/8/2025 3:01:03 PM | SENT |
| Lauren Bush | 24142742 | lbush@jw.com | 10/8/2025 3:01:03 PM | SENT |
| Anna Puff | 24144206 | apuff@sneedvine.com | 10/8/2025 3:01:03 PM | SENT |
| Edward Smith | 24037790 | esmith@808west.com | 10/8/2025 3:01:03 PM | SENT |
| Robert EdwardBattaile | | robert@manortx.us | 10/8/2025 3:01:03 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 10/8/2025 3:01:03 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 10/8/2025 3:01:03 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 10/8/2025 3:01:03 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 106610284
Filing Code Description: Original Proceeding Petition - Exempt
Filing Description: PETITION FOR WRIT OF MANDAMUS for 15th Court of Appeals
Status as of 10/8/2025 3:19 PM CST

Case Contacts

| Raylynn Howell | | raylynn.howell@bakerbotts.com | 10/8/2025 3:01:03 PM | SENT |
|---|---|---|---|---|
| Kim McBride | | kmcbride@mcginnislaw.com | 10/8/2025 3:01:03 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 10/8/2025 3:01:03 PM | SENT |
| Sneed Vine &Perry | | gtwnfilings@sneedvine.com | 10/8/2025 3:01:03 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 10/8/2025 3:01:03 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 10/8/2025 3:01:03 PM | SENT |
| Karah Powers | | kpowers@chmc-law.com | 10/8/2025 3:01:03 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 10/8/2025 3:01:03 PM | SENT |
| Benjamin C. Hunt | | ben.hunt@bakerbotts.com | 10/8/2025 3:01:03 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 10/8/2025 3:01:03 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 10/8/2025 3:01:03 PM | SENT |
| Carol Shipley | | cshipley@rrspllc.com | 10/8/2025 3:01:03 PM | SENT |
| Emily Hill | | ehill@manortx.gov | 10/8/2025 3:01:03 PM | SENT |
| Anne Weir | | aweir@manortx.gov | 10/8/2025 3:01:03 PM | SENT |